# HORN SILVER MINING COMPANY *v.* NEW YORK STATE.

**ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.**

No. 48. Argued and submitted December 11, 1891. — Decided February 29, 1892.

The statute of New York of May 26, 1881, (Laws of 1881, c. 361,) imposing a tax upon the corporate franchise or business of every corporation, joint-stock company or association incorporated or organized under any

law of the State or of any other State or county, to be computed by a percentage upon its whole capital stock, and to be ascertained in the manner provided by the act, when applied to a manufacturing corporation organized under the laws of Utah, and doing the greater part of its business out of the State of New York, and paying taxes in Illinois and Utah, but doing a small part of its business in the State of New York, does not tax persons or property not within the State; nor regulate interstate commerce; nor take private property without just compensation; nor deny to the corporation the equal protection of the laws; nor impose a tax beyond the constitutional power of the State: and the remedy of the corporation against hardship and injustice, if any has been suffered, must be sought in the legislature of the State.

The cases respecting state taxation of foreign corporations reviewed.

THE court stated the case as follows:

The defendant below, the plaintiff in error here, the Horn. Silver Mining Company, is a corporation created under the laws of the Territory of Utah. The present action is brought by the People of the State of New York, upon the allegation that it was doing business within the State in 1881 and 1882, to recover certain taxes alleged to be chargeable on its " corporate franchise or business " for those years and the penalty prescribed for their non-payment in each year.

By the act of the legislature of New York, approved May 26, 1881, (1 Sess. Laws, 1881, p. 481, c. 361,) amending a previous act providing for levying taxes for the use of the State upon certain corporations, joint-stock companies and associations, it was declared that every corporation, joint-stock company, or association then or thereafter incorporated or organized under any law of the State, or of any other State or country, and doing business in the State, with certain specified exceptions not important in this case, should be subject to a tax " upon its corporate franchise or business," to be computed in a mode specified, which was by a certain percentage upon its capital stock measured by the dividend on the par value of that stock, or, where there were no dividends, or its dividends were less than a certain percentage upon the par value of the capital stock, then according to a certain percentage upon the actual value of the capital stock, during the year.

The complaint in the action alleges the facts necessary to charge the corporation under this act for both years; that the amount of tax due pursuant to its provisions for the year ending on the first day of November, 1881, was $7500, and the additional sum of $1500 as a penalty for the delay of the company in paying the tax for two years after it became due, and that the amount of taxes due for the year ending on the first day of November, 1882, was $30,000, with the further sum of $3000 as a penalty of ten per centum for the delay of the defendant in paying the same.

The defendant answered the various allegations of the complaint, denying them so far as they charge liability to the people of New York, and setting up that it had been at all times a manufacturing corporation organized and existing under the laws of Utah; that it had never exercised any franchises or powers under the laws of New York; that its capital stock of ten millions of dollars was issued in payment for real estate in Utah and Illinois, which consists entirely of mining property and improvements thereon, and a refinery; that during the years ending November 1, 1881 and 1882, it carried on in the State of New York the business of manufacturing bars of silver from Utah and Illinois into standard bars; that said business constituted but a small portion of its entire business, and was the only business carried on in the State of New York, except its financial business and correspondence; that its capital stock was only partially employed in New York; and that it paid taxes both in Utah and in Illinois. It insisted that the statute, upon which the action was brought, was invalid and inoperative as to it because of the facts set forth, and because it established an unjust and unequal system of taxation, and fixed the amount of tax wholly without regard to the extent of the corporate franchises exercised by it in the State, and without regard to the amount of business done within the State, or the amount of capital employed or the amount of its capital stock held in the State, and the extent of the protection and benefits derived from its laws and agencies, and because it sought to tax property and persons not within the jurisdiction of the State or in

any way subject to its authority, and violated the principles of equality and uniformity. It also insisted that the taxation attempted was, in effect, the taking of private property without just compensation, the denial to defendant of the equal protection of the laws, and a regulation of commerce among the several States, and taxing property and business without the jurisdiction of the State of New York. By consent of parties the case was referred to a referee to hear and determine all the issues of law and fact therein. The referee found that the defendant was a corporation created and organized under the laws of the Territory of Utah, and was at all times mentioned in the complaint, doing business in the State of New York, and liable to be taxed on its corporate business under the provisions of section 3 of the act of New York above cited. He also found, in substance, that the stock and capital of the defendant were properly appraised and the amount of the tax was assessed in conformity with the provisions of that act, and that, accordingly, the sums above mentioned, amounting to $41,250, were due; and he directed a judgment to be entered therefor in favor of the plaintiff.

The referee also found that the defendant paid taxes, both in the Territory of Utah and in the State of Illinois in the years 1881 and 1882, and that the greater part of its business was out of the State of New York as well as the greater part of the capital used in its business.

Upon the findings of the referee judgment was entered in the Supreme Court of the State for the amount reported, and the case, being taken to the Court of Appeals, was there affirmed. Being then remitted to the Supreme Court and entered there, the case was brought, on a writ of error, to this court.

*Mr. Julien T. Davies* (with whom was *Mr. Edward Lyman Short* on the brief) for plaintiff in error.

I. The taxes in question are not license taxes imposed upon a foreign corporation as a prerequisite of doing business in the State of New York. The New York statutes impose a tax for revenue. Their purpose is to do this, and they are enacted

under the taxing power. They are not license laws, enacted under the police power of the State. These taxes are not the price of a permit to do business within the State, the payment of which is a condition precedent to the transaction of such business. They are to be judged therefore as tax laws. The title of the acts of 1880 and 1881 is,

" An Act *to provide for raising taxes* for the use of the State upon certain corporations," etc. The Constitution of the State of New York makes the title of an act in some cases of controlling importance, and it is held to be a " legitimate " subject for consideration in " determining the intent of special legislative action." *Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 514, 585.

The language of Mr. Justice Blatchford in *Philadelphia Fire Association* v. *New York*, 119 U. S. 110, 119, shows distinctly the difference between a license fee which is a prerequisite to doing business for the future and a tax. " This Pennsylvania corporation came into the State of New York to do business by the consent of the State, under this act of 1853, with a license granted for a year, and has received such license annually, to run for a year. It is within the State for any given year under such license, and subject to the conditions prescribed by statute. The State, having the power to exclude entirely, has the power to change the conditions of admission at any time for the future, and to impose as a condition the payment of a new tax, or a further tax, as a license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction. It is outside, at the threshold, seeking admission, with consent not yet given."

This law, therefore, can obtain no support from any assumed principle or rule of law that any burden may be imposed upon a foreign corporation as a condition of doing business in any State.

The legislature could not, because of its power to impose a burden upon foreign corporations as a condition of doing business, take money or property from a foreign corporation,

already lawfully doing business there, by an absolute and unconditional demand. It will hardly be disputed that a corporation created by one State may do business in another by virtue of interstate comity, unless prohibited by the law or established policy of the latter. *Cowell* v. *Springs Co.*, 100 U. S. 55; *Christian Union* v. *Yount*, 101 U. S. 352.

II. The taxes in question, in the view of the court of appeals of the State of New York, were laid upon the business of the Horn Silver Mining Company transacted in the State of New York. That business consisted: (1) In selling to the United States, at its Assay Office in the city of New York, the silver bullion' bars refined in Chicago from base bullion sent there from Utah, where the ore is mined and smelted into base bullion. (2) In transmitting a large part of the proceeds of the sales in New York to Utah. (3) In retaining the remainder of the proceeds of sales in the city of New York, loaning them and keeping them in bank until required for the payment of dividends, and then paying dividends in New York therefrom. (4) In maintaining an office for officers and directors.

The taxes in question, then, if the construction of the Court of Appeals be accepted, fall upon the business of the Horn Silver Mining Company done in the State of New York during the years 1881 and 1882, measured by its entire capital stock taken at a valuation in the case of the tax for the year 1881, and measured by the rate of annual dividends multiplied upon the entire capital stock in the case of the tax for the year 1882. As that business is principally and primarily the business of importing silver bullion into the State of New York and there selling it, all other business being merely incidental thereto, the taxes in question fall upon transactions of that character.

III. The business of bringing bars of silver from Chicago to New York and there selling them is interstate commerce. Inasmuch as interstate commerce, consisting in the transportation, purchase, sale and exchange of commodities, is national in its character, and must be governed by a uniform system, Congress, so long as it does not pass any law to regulate it or

allowing the States so to do, thereby indicates its will that such commerce shall be free and untrammelled." *Leisy* v. *Hardin*, 135 U. S. 100; *Mobile* v. *Kimball*, 102 U. S. 691; *Ball* v. *United States*, 10 Wall. 557; *Brown* v. *Maryland*, 12 Wheat. 419.

IV. The statutes in question regulate interstate commerce in so far as they tax plaintiff in error for its business done in the State of New York during the years 1881 and 1882, and therefore are invalid to sustain the taxes for which judgment has been recovered. *Hall* v. *De Cuir*, 95 U. S. 485; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Norfolk & Western Railroad* v. *Pennsylvania*, 136 U. S. 114; *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S. 727; *Moran* v. *New Orleans*, 112 U. S. 69; *Brown* v. *Maryland*, 12 Wheat. 419; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326; *Corson* v. *Maryland*, 120 U. S. 502; *Fargo* v. *Michigan*, 121 U. S. 230; *Lyng* v. *Michigan*, 135 U. S. 161.

V. If the taxes in question are not laid upon the business of plaintiff in error in New York they are laid upon all its business or upon all its capital, and therefore either regulate commerce among the States or effect extra territorial taxation and are invalid *pro tanto*. A tax on capital stock at its actual value is a general tax on the property of the corporation. *Bank of Commerce* v. *New York City*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200, 208.

As a valuation of the entire capital stock of plaintiff in error is the just and natural measure of either all the business of the company, or of all its property, it follows that the taxes in question fall either upon all its business or upon all its property.

The plaintiff in error is not endeavoring to escape its fair share of the burden of taxation. For ten years it has been trying to pay the State of New York its taxes upon its business transacted within that State, measured by the capital actually employed within the State, or to state the effect of the statute more accurately, upon its property situated within the State of New York. The question now presented in this case is whether New York, and, therefore, every State in the

Union, can, under guise of taxing business that has been trans-
acted within its border, (not of imposing a license tax,) tax all
the property of a foreign corporation wheresoever situated.
This tax is a property tax, and nothing else, in its operation
upon foreign corporations.  The recent decisions of this court
establish that proposition beyond question in dealing with
statutes with identical provisions.  *Western Union Telegraph
Co.* v. *Massachusetts,* 125 U. S. 530; *Pullman's Car Co.* v.
*Pennsylvania,* 141 U. S. 18; *Massachusetts* v. *Western Union
Telegraph Co.,* 141 U. S. 40.

VI. The statutes in question should be confined in their
effect to the property of plaintiff within the jurisdiction of the
State of New York.

If these statutes be declared effective only to tax the capital
of the plaintiff in error within the State of New York, they
will be confined in their operation to a subject within the tax-
ing power of this State, and restrained from operating upon
subjects beyond the exercise of this power.  *Telegraph Co.* v.
*Texas,* 105 U. S. 460; *Western Union Telegraph Co.* v. *Massa-
chusetts,* 125 U. S. 530; *Ratterman* v. *Western Union Telegraph
Co.,* 127 U. S. 411; *Massachusetts* v. *Western Union Telegraph
Co.,* 141 U. S. 40.

VII. The affirmance of the judgment against plaintiff in
error would be a deprivation by the State of New York of the
property of the plaintiff in error without due process of law,
and a denial of the equal protection of the laws, contrary to
the Fourteenth Amendment of the Constitution of the United
States.

*Mr. Charles F. Tabor,* Attorney General of the State of
New York, submitted on his brief.

Mr. Justice Field delivered the opinion of the court.

A corporation being the mere creature of the legislature, its
rights, privileges and powers are dependent solely upon the
terms of its charter.  Its creation (except where the corpora-
tion is sole) is the investing of two or more persons with the

capacity to act as a single individual, with a common name, and the privilege of succession in its members without dissolution, and with a limited individual liability. The right and privilege, or the franchise, as it may be termed, of being a corporation, is of great value to its members, and is considered as property separate and distinct from the p operty which the corporation itself may acquire. According to the law of most States this franchise or privilege of being a corporation is deemed personal property, and is subject to separate taxation. The right of the States to thus tax it has been recognized by this court and the state courts in instances without number. It was said in *Delaware Railroad Tax,* 18 Wall. 206, 231, that "the State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed, and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion;" except, we may add, as that discretion is controlled by the organic law of the State. And, as we there said also, "it is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the State; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction."

The granting of the rights and privileges which constitute the franchises of a corporation being a matter resting entirely within the control of the legislature, to be exercised in its good pleasure, it may be accompanied with any such conditions as the legislature may deem most suitable to the public interests and policy. It may impose as a condition of the grant, as well as, also, of its continued exercise, the payment of a specific sum to the State each year, or a portion of the profits or gross receipts of the corporation, and may prescribe such mode in which the sum shall be ascertained as may be deemed convenient and just. There is no constitutional inhibition against the legislature adopting any mode to arrive at the sum which it will exact as a condition of the creation of the corporation or of its continued existence. There can be, therefore, no pos-

sible objection to the validity of the tax prescribed by the statute of New York, so far as it relates to its own corporations. Nor can there be any greater objection to a similar tax upon a foreign corporation doing business by its permission within the State. As to a foreign corporation — and all corporations in States other than the State of its creation are deemed to be foreign corporations — it can claim a right to do business in another State, to any extent, only subject to the conditions imposed by its laws.

As said in *Paul* v. *Virginia*, 8 Wall. 168, 181, "the recognition of its existence even by other States, and the enforcement of its contracts made therein, depend purely upon the comity of those States — a comity which is never extended where the existence of the corporation or the exercise of its powers is prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

This doctrine has been so frequently declared by this court that it must be deemed no longer a matter of discussion, if any question can ever be considered at rest.

Only two exceptions or qualifications have been attached to it in all the numerous adjudications in which the subject has been considered, since the judgment of this court was announced more than half a century ago in *Bank of Augusta* v. *Earle*, 13 Pet. 519. One of these qualifications is that the State cannot exclude from its limits a corporation engaged in interstate or foreign commerce, established by the decision in *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1, 12. The other limitation on the power of the State is, where the corporation is in the employ of the general gov-

ernment, an obvious exception, first stated, we think, by the late Mr. Justice Bradley in *Stockton* v. *Baltimore & New York Railroad*, 32 Fed. Rep. 9, 14. As that learned justice said: "If Congress should employ a corporation of ship-build-ers to construct a man-of-war, they would have the right to purchase the necessary timber and iron in any State of the Union." And this court, in citing this passage, added, "without the permission and against the prohibition of the State." *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 186.

Having the absolute power of excluding the foreign corpora-tion the State may, of course, impose such conditions upon permitting the corporation to do business within its limits as it may judge expedient; and it may make the grant or privi-lege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital. No individual member of the corporation, or the corporation itself, can call in question the validity of any exaction which the State may require for the grant of its privileges. It does not lie in any foreign corporation to complain that it is subjected to the same law with the domestic corporation. The counsel for the appellant objects that the statute of New York is to be treated as a tax law, and not as a license to the corporation for per-mission to do business in the State. Conceding such to be the case we do not perceive how it in any respect affects the valid-ity of the tax. However it may be regarded, it is the condi-tion upon which a foreign corporation can do business in the State, and in doing such business it puts itself under the law of the State, however that may be characterized.

The only question therefore open to serious consideration in this case is one of fact: Did the Horn Silver Mining Company do business as a corporation within the State? The referee found such to be the fact, as a conclusion from many proba-tive circumstances in the case. That finding was never set aside, but stands approved by the courts of New York. If the correctness of the conclusion could be questioned, and held not justified by the facts in evidence — and they should be consid-ered as showing only transactions of interstate commerce, and not business in the State independently of such commerce — it

would be impossible to overcome the force of the answer of the defendant in which it alleges' that in the years 1881 and 1882 it was a manufacturing company carrying on manufactures within the State of New York. The admission is conclusive that the corporation was engaged in business in the State in those years, though, we are clear, not in such a business as rendered it a manufacturing corporation exempt from the tax prescribed by the statute.

To dispose of the position that the plaintiff in error was a manufacturing corporation, and therefore excepted from taxation under the statutes cited, it is only necessary to refer to the articles of association of the company. By them it appears that it was organized to conduct the business of buying, selling, leasing and operating mines and mining claims in the Territory of Utah, and smelting, reducing and refining works there and elsewhere; of conducting a general mining, milling and smelting business in all its branches, including buying and selling mineral ores and bullion; of carrying on a general mercantile business by buying and selling such goods, merchandise, stores and miners' supplies as are usually kept in and required by the wants of a mining camp or settlement; of building and operating all such roads, tramways and transportation routes as may be convenient in transporting the products of its business or procuring supplies; of purchasing, hiring and holding all such real and personal property, wherever situate, as may be required in carrying on any of its business, and, when no longer required for business purposes, of leasing, selling or exchanging the same; and generally to do all acts and things incidental to a general mining business, or to any of the aforesaid pursuits. They also declare that it was primarily formed for the immediate purpose of working and developing the estate, property and premises known as the Horn silver mine, and the treatment and reduction of the ores and metals therein contained. There is in the business thus detailed nothing that would characterize the corporation as a manufacturing company, and in no proper sense was it engaged in a manufacturing business within the State. The bullion taken by the company from its mines was shipped to

Chicago, and, after being refined and the silver separated from the lead, it was forwarded to the United States assay office in the city of New York, where it had an office, not for occasional business transactions, but where its transfer books were kept, its dividends declared and paid, and other business done by it such as is usually performed by corporations where their principal office of business is situated. It is true, the greater part of the business of the company was done out of the State, and the greater part of its capital was also without it, but the statute of New York does not require that the whole business of a foreign corporation shall be done within the State in order to subject it to the taxing power of the State. It makes, in that respect, no difference between home corporations and foreign corporations, as to the franchise or business of the corporation upon which the tax is levied, provided it does business within the State, as such corporation.

There seems to be a hardship in estimating the amount of the tax upon the corporation, for doing business within the State, according to the amount of its business or capital without the State. That is a matter, however, resting entirely in the control of the State, and not a matter of Federal law, and with which, of course, this court can in no way interfere.

Since this tax was levied the law of the State has been altered, and now the tax upon foreign corporations doing business in the State is estimated by the consideration only of the capital employed within the State. It is said that against nearly all other foreign corporations, except this one, the taxes upon their franchises have been computed upon the basis of the capital employed within the State; but as to that we can only repeat what was said in the Court of Appeals of the State, that, if this be true, the defendant may have reason to complain of unjust discrimination and may properly appeal for relief to the legislature of the State, but that it is not within the power of the court to grant any relief however great the hardship upon it.

The extent of the tax is a matter purely of state regulation, and any interference with it is beyond the jurisdiction of this court. The objection that it operates as a direct interference

with interstate commerce we do not think tenable. The tax is not levied upon articles imported, nor is there any impediment to their importation. The products of the mine can be brought into the State and sold there without taxation, and they can be exhibited there for sale in any office or building obtained for that purpose; the tax is levied only upon the franchise or business of the company.

*Judgment affirmed.*

Mr. Justice Harlan dissented.