Spear, J.
The question arising upon the record is whether or not the facts, appearing by petition and answer, bring the case within the operation of the act of May 19,1894,(91 Ohio Laws, 355-6), which provides that no foreign stock corporation other than banking and insurance shall do business in this state without procuring from the secretary .of state a certificate that it has complied'.with all the requirements of law to authorize it to do business in this state. No such foreign stock corporation doing business in this state without such certificate, shall maintain any action in this state *219 upon any contract made by it in this' state until it shall have procured such certificate. Then follow certain requisites which the .statute requires of foreign stock corporations before such certificates shall be issued, viz: The filing with the secretary of state of a sworn copy of its charter or certificate of incorporation and a statement under its corporate seal stating the amount of its capital stock, the business or objects of the corporation which it is engaged in or proposes to engage in within this state, and the place within this state which is to be its principal place of business, and designating in the manner prescribed in the code, a person upon whom process against such corporation may be served within the state.
It may be remarked, in passing, that the allegation in the answer that the plaintiff company was doing business in this state cannot aid the pleading, unless it can be shown that the performing of any act in the nature of a business transaction in the state is a doing of business against the terms of the statute. No fact is stated which will assist the court in determining whether the claim was true as applied to the contention of the parties here, and unless every business act in the state is forbidden without such certificate having first been obtained, it is but the statement of a legal conclusion. It is tó be further noted that there is no averment in the answer that the goods were manufactured in the state of Ohio, and, in the absence of such averment, the natural inference would be that they were manufactured in the state of Massachusetts, inasmuch as the petition shows that the plaintiff company is a corporation of that state, having its principal place of business in Boston.
*220 The question, therefore, is : Is the sale and delivery, within the state of Ohio, by a corporation of another state, of goods manufactured without the state of Ohio, the “doing of business” in this state within the meaning of the statute?
It is contended by plaintiff in error that, as held in Telegraph Co. v. Mayer, 28 Ohio St. 521:’ “Foreign corporations can exercise none of their franchises or powers within this state except by comity or legislative consent. That consent may be upon such terms and conditions as the general assembly under its legislative power may interpose.” And further that, under the facts, there, is no question of interstate commerce involved, because the sales and delivery were at Toledo, Ohio; and a clear case is thus made of a foreign corporation undertaking to maintain, without having complied with the terms of the statute, an action which the statute permits only upon the condition precedent of a compliance with its terms.
The general proposition announced in the Mayer case is established law. But it is there applied to facts which admittedly showed that the telegraph company was the owner of lines of telegraph in Ohio, maintaining offices and transacting as fully as in the state where incorporated (New York), a general telegraph business, and the question involved was whether such a corporation could be required to pay a tax on gross receipts in Ohio of its telegraph lines, which transactions were clearly an exercise of corporate franchises and powers. The decision fails to cover the case before us.
In arriving at the meaning of the statute, it is the duty of the court to avoid, if practicable, giving to it such construction as will render it void or inoperative. •
*221 Whatever view might have been entertained, if the question with respect to interstate commerce were an open one, it is now, as applied to facts like those in the case at bar, settled, that the attempt to forbid sales of this character is an interference with interstate commerce, and is beyond the power of the legislatures of the several states. The holdings are numerous that it ,is the right of persons and of corporations residing in one state to contract and sell their commodities in another, unrestrained except where restraint is justified under the police power. This rule does not deny the right of any state to impose conditions upon the power of foreign corporations to establish themselves within its boundaries for the performance generally of their business, involving the exercise of corporate franchises and powers, but does hold that the selling through traveling agents and delivering of goods manufactured outside of the state; does not fall directly within the purview of their corporate powers. The pertinent provision of the federal constitution is that “the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states” and that instrument gives to congress power ‘ ‘ to regulate commerce ' * * * among the several states. ” The distinction to be noted is that the sale and delivery of merchandise is a right possessed in common by all the citizens of the state; the exerci.se of corporate franchises and powers, is not — it is a special privilege conferred only on corporations. And the sale and delivery in one state of goods manufactured in another state, by a citizen of that state, is interstate commence. Amid a score of authorities it is sufficient to cite Cooper Manuf'g Co. v. Ferguson, *222 113 U. S. 727; Robbins v. Shelby County, etc., 120 U. S. 489; Horn Silver Mining Co. v. New York, 143 U. S. 314; Brennan v. Titusville, 153 U. S. 289, and Coit v. Sutton, 102 Mich. 324. The decisions of the Supreme Court of the United States are controlling. They forbid the exercise by the legislature of the power claimed by the plaintiff in error, and hence its construction of the statute cannot be maintained, because it would result in a conflict upon a question, as to which question the authority of the general government is paramount to the governments of the states.
But if it were determined that the power exists, do the terms of the act bear the construction contended for? The act requires, on the part of a foreign corporation, a showing of its condition, its capital stock, the business it proposes to engage in within the state, and the designation of a place as a principal place of business, and of a person upon whom process against it may be served, and such- person must have an office at the principal place of business. He is given authority to maintain actions in the courts of the state. And where the agent dies or resigns, the corporation is required, within thirty days, to appoint another. For the certificate of the secretary of state, a fee is to be paid, from $15 to $50, according to amount of capital stock
Why should all this machinery be necessary in case of the sale and delivery of. .g-oods ? Of what importance is it to know the amount of capital stock in order to permit the sale? Why is a principal place of business of consequence when the business may be only one sale ? Why require a general agent and an office in a specified place when the sale is to be made by an itinerant agent *223 anywhere in the state? Do not these provisions imply that the purpose of the act is exactly what is stated in the title, viz: “An act to regulate foreign stock corporations?” And does this not mean their regulation in respect of their exercise of corporate franchises and powers?
The provisions of the law'are not, as it seems to us, consistent with an intent to interfere with the enjoyment by corporations of other states of the ordinary privileges enjoyed, as matter of right, by .citizens of the states generally, and hence the act does not apply to sales and delivery of goods such as are shown by the record in this case.
A point is made that, for all'that appears in the answer, the Glen Company may be a banking or insurance corporation. It is not worth while to take time to discuss this, for it is not pretended that it is such corporation, and an amendment would easily cure that defect, were the answer otherwise sufficient.
An act is found in -the volume of Ohio Laws, heretofore cited, at page 272, relating- to the regulation of foreign corporations doing business in this state. But this act is not relied upon by plaintiff in error, and its bearing upon this case is not, for that reason, here considered.

Judgment affirmed.