## Envelope and Stamp Machine Co. v. White.

*District Court of Arapahoe County, Sept. 9, 1901,*
*No. 32,864.*

184

Robinson & Grant, plaintiff's attorneys; Mel E. Peters, defendant's attorney.

CARPENTER, J.

The plaintiff, a corporation organized under the laws of the state of Illinois, brings its action against the defendant to recover damages for the refusal of the defendant to accept and pay for certain articles of personal property sold to the defendant May 2, 1901, to be delivered to the defendant at Denver.

The defendant admits the allegations of the complaint, but sets up several defenses based on statutes of this state enacted by the general assembly of 1901. (L. 01, pp. 116–125.)

The first of these defenses rests on section 4 of "An act relating to corporations and prescribing certain fees to be paid by corporations, foreign and domestic, and to repeal certain acts and all acts and parts of acts in conflict herewith." (L. '01, pp. 116–125.) Said § 4 is as follows:

"Every corporation, joint stock company or association incorporated by or under any general or special law of any foreign state or kingdom, or any state or territory of the United States, beyond the limits of this state, having a capital stock divided into shares, shall pay to the secretary of state, for the use of the state, a fee of thirty dollars in case the capital stock which said corporation, joint stock company or association is authorized to have, does not exceed fifty thousand dollars; but in case the capital stock thereof is in excess of fifty thousand dollars, the secretary of state shall collect the further sum of thirty cents on each and every thousand dollars of such excess, and a like fee of thirty cents on each thousand of the amount of each subsequent increase of stock. The said fee shall be due and payable upon the filing of the certificate of incorporation, articles of association or charter of said corporation, joint stock company or association in the office of the secretary of state, and no such corporation, joint stock company or association shall have or exercise any corporate powers or hold or acquire any real or personal property, franchises, rights or privileges, or be permitted to do any business or prosecute or defend in any suit in this state until the said fee shall have been paid." (L. 01, p. 118.)

The second defense rests on section 10 of the act above mentioned, which is as follows:

"Sec. 10. No corporation, joint stock company or association, incorporated by or under any general or special law of this state, or by or under any general or special law of any foreign state or kingdom or of any state or territory of the United States, beyond the limits of this state, shall exercise any corporate powers or acquire or hold any real or personal property, or any franchises, rights or privileges, or

do any business or prosecute or defend in any suit, in this state, until it shall have received from the secretary of this state a certificate setting forth that full payment has been made by such corporation, joint stock company or association, of all fees and taxes prescribed by law to be paid to the secretary of state, and every such corporation, joint stock company or association shall pay to the secretary of state for each such certificate, a fee of five dollars. Nothing in this section shall apply to corporations not for pecuniary profit, or corporations organized for religious, educational or benevolent purposes." (L. 01, p 121.)

The third defense is founded on section 70 B of "An act in relation to public revenues, and repealing all previous acts in relation thereto" (L. 01, pp. 241–356), said section being as follows:

"Sec. 70 B. Every foreign corporation which has heretofore obtained, or which shall hereafter obtain, the right and privilege to transact and carry on business within the limits of the state of Colorado, shall, in addition to the fees and taxes now provided for by law, and as a condition precedent to its right to do any business within the limits of this state, pay annually, on or before the first day of May of each year, or at the time of obtaining such right or privilege, and on or before the first day of May of each year thereafter, as the case may be, to the auditor of the state of Colorado, a state license tax as follows:

"Ten cents upon each one thousand dollars of its capital stock; provided, no company shall pay over $1,000 as such tax in any one year." (L. '01, pp. 273–4.)

The fourth defense is founded upon section 9 of the act first above mentioned, which is as follows:

"Sec. 9. The secretary of state shall exact a fee of two dollars and fifty cents for filing and recording

each certificate of impression of the corporate seal of any corporation, and a fee of two dollars and fifty cents for filing and recording each certificate of paid up stock of any corporation; provided, however, that where such certificate of paid up stock shows that the capital stock of such corporation is in excess of fifty thousand dollars, that such corporation, joint stock company or association shall pay a further fee of five cents per thousand upon each thousand dollars of capital stock in excess of fifty thousand dollars for the filing and recording of said certificate of paid up stock." (L. '01, pp. 120–1.)

To these several defenses the plaintiff demurs, and the cause is now before the court upon this demurrer.

The plaintiff contends (1) that the several sections above recited are unconstitutional, because "they conflict with that clause of the federal constitution (Art. 1, § 8, cl. 3), which gives to congress the right to regulate commerce between the states." (2) "That they are in conflict with the section of the state constitution (Art. 10, § 3), which insures uniformity of taxation on all subjects of a class." (3) They are unconstitutional "because the penalty clauses are not germane to the title of the respective acts." (Colo. Const., Art. 5, § 21.)

The argument of plaintiff is that the contract is purely one of interstate commerce, and that the legislature of a state is without power to pass any law "which directly or indirectly interferes with, or is in any manner a regulation of, that commerce," and that the exaction from a foreign corportion of the fees and taxes above specified is a burden upon interstate commerce of such a nature as to be obnoxious to that clause of the constitution of the United States which provides that "congress shall have power to

regulate commerce with foreign nations and among the several states." (U. S. Const., Art. 1, § 8, cl. 3.)

A large number of cases from the supreme court of the United States are cited in support of this contention, and Brennan v. Titusville, 153 U. S. 289, 14 S. Ct. 829, is quoted very copiously in the plaintiff's brief. The facts in that case were that Brennan had been convicted of the violation of an ordinance of the City of Titusville, Pennsylvania, providing for the levy and collection of annual license taxes in the city, which ordinance among other things provided that all persons canvassing or soliciting within the city orders for goods should procure a license to transact such business, for which they were required to pay various sums according to the time for which the license was granted. Brennan was an agent of a Chicago house soliciting orders for pictures and frames and had not obtained a license. He was sentenced to pay a fine of $25 and costs of suit. From this judgment an appeal was taken to the Supreme Court of Pennsylvania, which court affirmed the judgment. A writ of error from the Supreme Court of the United States was sued out. It was held by the latter court, Mr. Justice Brewer delivering the opinion, that the exaction of this license fee was a direct charge and burden upon the business, and therefore could not be sustained. In the course of his opinion the learned justice takes up and discusses very many of the U. S. Supreme Court cases involving questions of a similar character. Neither this case nor the cases therein cited sustain the argument of the plaintiff here. The proposition laid down in the Brennan case as well as in every other case in the Supreme Court of the United States concerning this question is: "No state can levy a tax on interstate commerce in any form, whether by way of

duties laid on the transportation of the subjects of that commerce or on the receipts derived from that transportation or on the occupation or business of carrying it on."

The legislation brought into question here does not conflict in any degree with the doctrine expressed in the above proposition. The Brennan case and kindred cases are not at all analogous to the one at bar.

It is settled law that, "No state is under obligation to permit a foreign corporation to carry on business or exercise franchises within its territory." In Paul v. Virginia, 8 Wall. 168, the court, speaking of the right of a corporation to do business in a state other than the state of its creation, says: "The recognition of its existence even by other states and the enforcement of its contracts made therein depend purely upon the comity of those states, a comity which is never extended where the existence of a corporation or the exercise of its powers is prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states and depending for such recognition and the enforcement of its contracts upon their assent, it follows as a matter of course that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion." Commenting upon this statement in Horn Silver Mining Co. v. State of New York, 143 U. S. 305, 12 S. Ct. 403, Mr. Justice Field, speaking for the court, says: "This doctrine

has been so frequently declared by this court that it must be deemed no longer a matter of discussion, if any question can ever be considered at rest." In this case last cited it is said that there have been but two qualifications attached to the doctrine announced in Paul v. Virginia in all the numerous adjudications in which the subject has been considered since Bank of Augusta v. Earl, 13 Peters 519: "One of these qualifications is that the state cannot exclude from its limits a corporation engaged in interstate or foreign commerce; the other where the corporation is in the employ of the general government." Here there is no attempt to exclude a foreign corporation; there is no attempt to levy a tax on interstate commerce; no duties are laid on the transportation of articles of commerce into this state; nor on the receipts derived from such transportation; no tax is levied upon the business or occupation. The legislation in question places no barrier in the way of foreign corporations engaged in interstate commerce. They may deal with with our citizens if they so desire untrammelled and unhindered. If, however, they desire recognition by the state itself, the sovereignty, if they wish to invoke its aid, if they desire to use its tribunals for the enforcement of such contracts as they make with its citizens, then they must comply with the precedent conditions imposed by the state. Corporations have no legal existence outside of the states of their creation. A corporation organized in Illinois under the laws of that state is not a corporation in Colorado. Here it is nothing. The right to be something, to be recognized as a person, a legal entity, is a valuable privilege here as well as in the State of Illinois. For this valuable privilege this

state has seen fit to exact a fee. Under all of the authorities it had the undoubted right to do so. In California v. Central Pacific Railroad Co., 127 U. S. 40, 8 S. C. 1073, it is said: "No persons can make themselves a body corporate and politic without legislative authority. Corporate capacity is a franchise." In Home Insurance Co. v. New York, 134 U. S. 595, 10 S. C. 593, Mr. Justice Field, speaking for the court, says: "The right or privilege to be a corporation, or to do business as such body is one generally deemed of value to the corporation or it would not be sought in such numbers as at present. It is a right or privilege by which several individuals may unite themselves under a common name and act as a single person, with a succession of members without dissolution or suspension of business and with a limited individual liability. The granting of such right or privilege rests entirely within the discretion of the state." In Ashley v. Ryan, 153 U. S. 436, a number of railroad corporations organized in several states were consolidated into one. The articles of consolidation were presented to Ryan, secretary of state of the State of Ohio, for filing, and $700 tendered as the fee, that being the proper fee for the Ohio corporation which had entered into the consolidation. Ryan refused to file the articles for the amount tendered, and demanded $52,000, the latter amount being calculated upon the par value of the entire stock of the consolidating companies. The amount demanded was paid under protest, and an action was at once brought to recover the excess, on the ground, among others, that its exaction was an attempt on the part of the State of Ohio to lay a burden on interstate commerce in violation of the

constitution of the United States. There is no distinction in principle between that case and the one presented here. After quoting from a number of cases, among them California v. Central Pacific Railway Co., *supra*, and Home Insurance Co. v. New York, *supra*, Mr. Justice White, delivering the opinion of the court, says: "It follows from these principles that a state in granting a corporate privilege to its own citizens, or what is equivalent thereto, in permitting a foreign corporation to become one of the constituent elements of a consolidated corporation organized under its laws, may impose such conditions as it deems proper, and that the acceptance of the franchise in either case implies a submission to conditions without which the franchise could not have been obtained." He further says: "The question here is not the power of the State of Ohio to lay a charge on interstate commerce or to prevent a foreign corporation from engaging in. interstate commerce within its confines, but simply the right of the state to determine upon what conditions its laws as to the consolidation of corporations may be availed of." So it is here not a question of the power of the State of Colorado "To lay a charge on interstate commerce," but the right to determine upon what conditions a foreign corporation may avail itself of our laws and of our tribunals in the enforcement of its contracts. The learned justice further says: "Considering, as we do, that the payment of the charge was a condition imposed by the State of Ohio upon the taking of corporate being or the exercise of corporate franchises, the right to which depended solely on the law of that state, and hence that liability for the charge was entirely optional, we con-

clude that the exaction constituted no tax upon interstate commerce or the right to carry on the same, or the instruments thereof." So much as to the right of a state to exact a fee as a condition precedent to the recognition of corporate existence by the state and its tribunals.

As to the annual tax required by section 70 B of the Revenue Act (L. 'o1, pp. 273-4) as a condition precedent to the right of a foreign corporation to do business within this state and to avail itself of our laws and our courts in the enforcement of its contracts, I think it is controlled by what I have already said respecting the exaction of a fee. It is not a tax upon interstate commerce, it is simply a tax upon the franchise. Horn Silver Mining Co. v. State of New York, *supra*, is an additional authority upon this question. In that case it is said: "The right and privilege, or the franchise, as it may be termed, of being a corporation is of great value to its members, and is considered as property separate and distinct from the property which the corporation itself may acquire. According to the law of most states this franchise or privilege of being a corporation is deemed personal property and is subject to separate taxation. The right of the states to thus tax it has been recognized by this court and the state courts in instances without number." In another place in the same case it is said: "The granting of the rights and privileges which constitute the franchises of a corporation being a matter resting entirely within the control of the legislature, to be exercised in its good pleasure, it may be accompanied with any such conditions as the legislature may deem most suitable to the public interest and policy. It may impose as a

condition of the grant as well as also of its continued exercise the payment of a specific sum to the state each year, or a portion of the profits or gross receipts of the corporation, and may prescribe such mode in which the sum shall be ascertained, as may be deemed convenient and just. There is no constitutional inhibition against the legislature adopting any mode to arrive at the sum which it will exact as a condition of the creation of the corporation or its continued existence. There can be, therefore, no possible objection to the validity of the tax prescribed by the statute of New York so far as it relates to its own corporations. Nor can there be any greater objection to a similar tax upon a foreign corporation doing business by its permission within the state. As to a foreign corporation—and all corporations in states other than the state of its creation are deemed to be foreign corporations—it can claim a right to do business in another state to any extent, only subject to the conditions imposed by its laws." In conclusion the court says: "The extent of the tax is a matter purely of state regulation, and any interference with it is beyond the jurisdiction of this court. The objection that it operates as a direct interference with interstate commerce we do not think tenable. The tax is not levied upon articles imported, nor is there any impediment to their importation. The products of the mine can be brought into the state and sold there without taxation, and they can be exhibited there for sale in any office or building obtained for that purpose; the tax is levied only upon the franchise or business of the company."

With respect to the second proposition advanced by plaintiff, namely, that the sections of the act

concerning corporations and of the Revenue Act involved conflict with that provision of the state constitution which requires uniformity of taxation on all subjects of the same class, (Art. 10, § 3) it seems to me that the point is not well taken. The argument is that the tax and fee imposed on foreign corporations are much greater than those required of domestic corporations, and that foreign and domestic corporations together constitute a class. With this contention I do not agree. In my opinion foreign and domestic corporations are distinct classes and not simply divisions of one class, as claimed by plaintiff. Huges v. Cairo, 92 Ill. 339, is an authority upon this proposition. The court in that case say: "The error of the position taken consists in assuming that all insurance companies, whether foreign or domestic, constitute a single class indivisible for taxation under this section of the constitution. This is a mistaken view of the law. There is and can be no reason why insurance companies may not be divided into classes consisting of foreign and domestic companies, and burdens imposed upon the former that are not imposed by any general law on the latter class without an infraction of any provision of the constitution."

The provision of the constitution of Illinois thereunder consideration was that the general assembly should have power to tax insurance interests or business, and "Persons or corporations owning or using franchises and privileges in such manner as it shall from time to time direct by general law uniform as to the class on which it operated."

The case of the State Treasurer v. the Auditor General, 46 Michigan 224, cited by plaintiff, is not in

point. There the tax was levied upon the gross earnings of the railroad company whose road was partly outside of the jurisdiction. There was an attempt to collect taxes upon earnings without the state as well as upon earnings within the state.

The third proposition is that the penalty clauses are not germane to the act, and Board of Co. Com'rs of Rio Grande Co v. Whelan, 3 Colo. Dec. 294, is cited in support of it. The case is not analagous to the one at bar. This case, it seems to me, is ruled by Golden Canal Co. v. Bright, 8 Colo. 144, and In re Pratt, 19 Colo. 138.

The provisions denominated penalty clauses are intended to compel the observance of the conditions imposed and are well suited to that purpose, and that which is appropriate to carrying out the purposes of a statute cannot be said to be not germane.

The demurrer to the first, second and third defenses is overruled. The fourth defense is based upon section 9 of the act relating to corporations, (L. '01, pp. 120–1) and is to the effect that the secretary of state shall exact a fee of two dollars and fifty cents for filing and recording each certificate of impression of the corporate seal, and the same fee for a certificate of paid-up stock. It does not seem to be obligatory upon corporations, either domestic or foreign, to file impressions of their seals or certificates of paid-up stock. Certain benefits accrue to corporations if they do so, but I do not understand that failure operates to prevent the doing of business or the maintaining of suits. For this reason the demurrer to the fourth defense is sustained.