## INTERSTATE COMMERCE AND MUNICIPAL LICENSE FEES.

[Circuit Court of Coshocton County.]

### IN RE OSCAR JULIUS.

Decided, May Term, 1904.

*Interstate Commerce—What It Is—Goods Not Subject to State Taxation, When—License Tax, a Tax on Goods—And a Direct Burden on Interstate Commerce, When—Ordinance of Municipality in Conflict with Section 8 of Article I of the Constitution of the United States, When.*

1. The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce. Such commerce is not subject to state taxation, even though there be no discrimination between it and domestic commerce. The sale in one state of goods manufactured in another state is interstate commerce and not subject to state taxation.

2. A manufacturer of goods which are legitimate subject of commerce, who carries on his business of manufacturing in one state, can send an agent into another state to solicit orders for the products of his manufactory without paying to the latter state or a muni-

cipality within such state a license for the privilege of such soliciting to sell his goods.

3. A license tax required for the sale of goods is in effect a tax upon the goods themselves.

4. A license tax imposed by a municipal corporation within one state upon an agent of a citizen of another state, for the privilege of selling or seeking to sell his goods in the former state, is a direct burden on interstate commerce, and, therefore, beyond the power of the state and of the municipality thereof.

5. An ordinance of a municipality of this state, under which a license fee is required from the agent of a portrait company residing in another state for the privilege of canvassing for orders for the copying or enlarging of pictures to be manufactured by said company in said foreign state and delivered to customers in said municipality, is in conflict with Section 8, Article I of the Constitution of the United States, and, therefore, void.

VOORHEES, J.; DONAHUE, J., and McCARTY, J., concur.

This is an application on the part of Oscar Julius to the judges of the circuit court of this county for a writ of habeas corpus. The petitioner was arrested upon a warrant issued by the mayor of the city of Coshocton, in the county of Coshocton and state of Ohio, based upon an affidavit charging that "said Oscar Julius, on or about the 21st day of December, A. D. 1903, at the city and county aforesaid, unlawfully did violate the license ordinance of said city in this, to-wit, by convassing in the corporate limits of said city, for orders for the copying and enlarging of pictures in what is known as portrait photographing, which copying and enlarging was not to be the product of the hands of the said Julius nor was said work to be done within the limits of said city, but was to be done by the Chicago Crayon Company, a corporation under the laws of Illinois and located at Chicago, Illinois, of which said Julius was an employe, no license having been obtained from the mayor of said city by said Oscar Julius or said corporation, which act was contrary to the ordinance in such case made and provided." To which affidavit the defendant demurred. The demurrer was overruled and exceptions taken. Thereupon the defendant entered a plea of not guilty, waived in writing a trial by jury and submitted to be tried by the mayor. Upon trial he was found guilty as charged in said affidavit, and it was ordered and adjudged by

the mayor that defendant pay a fine of five dollars and costs of prosecution, taxed at three dollars, and stand committed to the city prison until the fine and costs were paid, or discharged by due process of law.  To which order and judgment of the mayor the defendant then and there excepted.  Defendant filed his motion for a new trial, which motion was overruled and exceptions taken.  Thereupon the defendant applied by petition to this court for a writ of habeas corpus, on the ground that he was unlawfully restrained of his liberty by reason of such conviction, fine and imprisonment, for the reason that the ordinance and the statute of the state under which he had been arrested, tried, convicted and sentenced, were in conflict with the Constitution of the state of Ohio, and with the Constitution of the United States.  A writ of habeas corpus was issued by one of the judges of this court at chambers for the production of the body of said Oscar Julius before the circuit court in and for said Coshocton county, on the first day of its next term to be held at Coshocton, May 10, 1904.  At said May Term of the circuit court the cause was submitted upon the petition, exhibits, and an agreed statement of facts.

After what has already been stated, it will be sufficient for the determination of the law of this case to say, that from the agreed statement of facts it appears that the defendant was on the 21st day of December, 1903, canvassing said city of Coshocton, going from house to house, showing samples of portraits and soliciting orders for similar work to be sometime thereafter delivered and paid for; that he was acting as the agent and employe of the Chicago Crayon Company, a corporation duly incorporated under the laws of the state of Illinois, and engaged in the making of portraits in oil, crayon, India ink, water colors and pastel, said portraits being made in the city of Chicago, Illinois, and sold by the agents of said company in various states of the United States, including the state of Ohio; that no license was procured by said defendant or said company from the mayor of said city of Coshocton, as required by its ordinance; that said defendant did not deliver any goods, wares, or merchandise for any purpose in said city of Coshocton, nor did he receive any money in payment for any

such articles; that said portraits were not to be the product of said agent's own hands, nor was the work to be done in the corporate limits of said city, but the work was to be done in the city of Chicago, Illinois, where said corporation is located; that said portraits when made were to be shipped from the city of Chicago to the city of Coshocton, and there. delivered to the persons ordering the same, and upon said delivery payment was to be made; that said Oscar Julius is a non-resident of the state of Ohio and is a citizen of the state of New York.

The arrest was based upon an ordinance of the city of Coshocton passed April 29, 1902, and known as Section 125 of the Revised Ordinances of said city. Said section is as follows:

"It shall be unlawful for any person, persons, firm or corporation to canvass within the corporate limits of the city of Coshocton, Ohio, for orders for the copying or enlarging of pictures in what is known as portrait photographing, except the same shall be the product of his or their own hands, and the work done within the limits of the city of Coshocton, without first procuring from the mayor of said city a license so to do, and shall pay for said license at a rate of not less than one dollar, nor more than twenty dollars per day, and any person, persons, firm or corporation who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof before the mayor, shall be punished by a fine of not less than five dollars nor more than twenty dollars, at the discretion of the mayor."

It is contended by counsel for the petitioner that the ordinance, as well as the act of the Legislature conferring licensing power upon municipal councils, Section 2669-6, Revised Statutes, of Ohio, upon which act the authority to pass such ordinance is based, are in conflict with that part of Section 8, Article I of the Constitution of the United States, which provides:

"The Congress shall have power   *   *   *   to regulate commerce   *   *   *   among the several states."   *   *   *

Counsel for the city contend that canvassing a city, showing samples of portraits and soliciting orders for similar work to be sometime thereafter delivered and paid for, although the canvasser is the agent and employe of a non-resident person

or corporation, by whom the work is to be done out of the state of Ohio, do not come within the meaning of commerce as that word is used in the above section, and that the state, and by its authority, a city council by ordinance has the right to protect their citizens, laborers and markets against an invasion of such products.

In *County of Mobile* v. *Kimball*, 102 U. S., 691, 692, commerce is defined as follows:

"Commerce with foreign countries and among the states strictly considered consists in intercourse and traffic including in these terms·navigation and the transportation and transit of persons and property, as well as the purchase, sale and exchange of commodities."

In *Brennan* v. *Titusville*, 153 U. S., 269, a maker of portraits and picture frames in Chicago, Ill., had sent his agent into the state of Pennsylvania to solicit orders for pictures and picture frames, by going personally to citizens and residents of that state. Upon receiving orders for pictures and frames the agent forwarded such orders to the manufacturer in Chicago, where the goods were made and shipped by him to the purchaser in Titusville by railroad freight or express, the express companies or the manufacturer's agents collecting the price of the goods and forwarding the amounts to him at Chicago. The ordinance of the city of Titusville required that persons so employed in canvassing or soliciting in the city should procure a license from the mayor, paying therefor certain sums fixed by the ordinance, but providing that its provisions should not apply to persons selling by samples to manufacturers or licensed merchants or dealers residing or doing business in said city. The court held that the license tax imposed by the ordinance was a direct burden upon interstate commerce and was, therefore, unconstitutional and void.

It is not competent for a state Legislature or a municipality by ordinance to discriminate against such commodities or goods, or declare that they are not articles of traffic and commerce and by unfriendly legislation exclude them from the state. The sale and delivery in one state of goods manufactured in another

state, by a citizen of that state, is interstate commerce. On this proposition it is sufficient to cite *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S., 727; *Robbins* v. *Shelby County, etc.*, 120 U. S., 489; *Horn Silver Mining Co.* v. *New York*, 143 U. S., 314; *Brennan* v. *Titusville, supra; Colt* v. *Sutton*, 102 Mich., 324.

The decisions of the Supreme Court of the United States are controlling. They forbid the exercise by the Legislature or the municipality of the power claimed by the city solicitor in this case. Hence his construction of the statute and ordinance can not be maintained, because it would result in a conflict upon a question where the authority of the general government is paramount to the governments of the state. To give a state Legislature power to legislate in such cases requires an act of Congress to that effect. *Leisy* v. *Hardin*, 135 U. S., 100; *Welton* v. *Missouri*, 91 U. S., 275.

The police power is reserved to the states, and they have the right to regulate internal trade so as to protect the health and public welfare of the people, but this power can not be so extended as to encroach upon interstate commerce. Whether any particular act does so encroach or not is a question for the courts, and in the determination of that question the Supreme Court of the United States refuses to be bound by the opinion of the state Legislatures or the state courts. If the act is in itself an encroachment upon interstate commerce, though expressed to be a regulation under the state police power, the federal courts hold it unconstitutional. *Leisy* v. *Hardin, supra; Minnesota* v. *Barber*, 136 U. S., 313.

The ordinance in question is not a police regulation, but is an attempt to prevent, or at least discourage, the importation and sale of goods manufactured in another state, and thereby protect citizens, laborers and markets within the limits of the municipality against such goods. If the municipality or its citizens are in a condition to require such protection, the appeal for relief must be made to Congress, which body alone has the power to legally grant such relief. *In re Roher, Petitioner*, 140 U. S., 545.

It is urged by counsel for the city to relieve this ordinance from these constitutional objections that the license imposed is not a tax upon the goods, but only a license fee charged as a police regulation, and, therefore, does not come within the constitutional inhibition. It is well settled that in legal effect the money paid for a license to sell goods is a tax upon such goods. *Brennen* v. *Titusville, supra; Brown* v. *Maryland,* 12 Wheat., 419; *Welton* v. *Missouri, supra; Leloup* v. *Mobile,* 127 U. S., 640.

In the case of *Caldwell* v. *North Carolina,* 187 U. S., 622, it was held that "an ordinance under which a license may be required from the agent of a non-resident portrait company, who received from such company pictures and frames manufactured by it to fill orders previously obtained, and after breaking bulk and placing each picture in frame designated for it, delivered them to the respective purchaser, is invalid as an attempt to interfere with and regulate commerce." We think this case is on all fours with the question here and is conclusive against the validity of this ordinance.

We are not required in this case to pass upon the validity of this ordinance so far as it might affect citizens of our own state. We are disposing of the ordinance as one that interferes with interstate commerce, and for this reason we hold that it is in violation of Section 8, of Article I of the Constitution of the United States. The conviction of the petitioner herein is wrong; the affidavit does not charge him with any act in violation of any law of the state or ordinance of the city, that could be enforced against him. The writ is allowed. The petitioner is dismissed from custody at the costs of the state. Petitioner discharged.

*Charles B. Hunt* and *T. B. Roche,* for petitioner.

*Howard E. Hahn,* City Solicitor, contra.