(November 22, 1913.)

# NORTHERN PACIFIC RAILWAY CO., Respondent, v. WILFRED L. GIFFORD, Secretary of State, Appellant.

[136 Pac. 1131.]

INTERSTATE COMMERCE—DOING BUSINESS IN THIS STATE—EXCISE OR LICENSE TAX—CONSTITUTIONALITY OF EXCISE TAX.

1. Under the constitution of this state, sec. 2, art. 7, the legislature is authorized to impose a license tax both upon natural persons and corporations, other than municipal, "doing business in this state."

2. The words "doing business in this state" employed in the constitution do not apply to a foreign corporation *doing only an interstate* business, but only apply to local and intrastate business as the same may be distinguished from interstate business.

3. Where a statute would be unconstitutional as applied to a certain class of business and cases arising thereunder and is constitutional as applied to another class, and it is reasonably probable that the legislature had in mind applying it to the latter class, it should be held to have been intended by the legislature to apply only to the class to which it could constitutionally apply.

4. Under the provisions of sec. 2, art. 7, of the state constitution, authorizing the legislature to provide for such revenue as may be needful by levying a tax by valuation so that every person or corporation shall pay a tax in proportion to the value of his, her or its property, *held*, that sec. 3, chap. 6, of the Session Laws of the extraordinary session of the legislature of 1912, laying a license tax upon domestic and foreign corporations doing business in this state, is an excise tax within the purview and meaning of the state constitution and was so intended by the state legislature, and that it is not a property tax which is laid or intended to be laid upon corporations engaged exclusively in interstate commerce and cannot apply thereto, but that it does apply to the local and intrastate business in which a corporation may be engaged, whether it is also engaged in interstate commerce or not so engaged.

5. Under the act of the legislature, the authorized capital stock of a corporation is only used as a basis of measuring the license or excise tax which is imposed upon the corporation and is not used for the purpose of a basis for taxing the property of the corporation, the purpose being to graduate the license tax proportionately to the size, magnitude and probable activities of the corporation seeking to engage in domestic business.

6.  A license or corporation tax imposed on a foreign corporation engaged in both interstate and intrastate business must be so imposed upon the domestic or intrastate business and have such direct reference to that as not to impose burdens upon or impair the right of the corporation to continue to carry on its interstate business and do all things necessary to be done in conducting such business.

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. E. C. Steele, Judge.

Action by plaintiff to recover from Wilfred L. Gifford, Secretary of State, a license tax paid under protest.   Judgment for plaintiff.   Defendant appealed.   *Reversed.*

J. H. Peterson, Attorney General, J. J. Guheen, T. C. Coffin, Assistants, and Miles S. Johnson, County Attorney, for Appellant.

The state may impose such conditions as it deems proper upon permitting a foreign corporation to do business within its borders.   (*Horn Silver Min. Co. v. New York,* 143 U. S. 305, 12 Sup. Ct. 403, 36 L. ed. 164.)

It is not every burden affecting interstate commerce which is unconstitutional.   (*Galveston, H. & S. A. Ry. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, 52 L. ed. 1031.)

The controlling question in determining the validity of state statutes imposing taxes upon foreign corporations doing business within the state is whether the exactions are an excise or a property tax.   (*Society for Savings v. Coite,* 73 U. S. (6 Wall.) 594, 18 L. ed. 897; *Hamilton Mfg. Co. v. Massachusetts,* 73 U. S. (6 Wall.) 632, 18 L. ed. 904; *Provident Institute for Savings v. Massachusetts,* 73 U. S. (6 Wall.) 611, 18 L. ed. 907; *Home Ins. Co. v. New York,* 134 U. S. 594, 10 Sup. Ct. 593, 33 L. ed. 1025; *Maine v. Grand Trunk Ry.,* 142 U. S. 217, 12 Sup. Ct. 121, 35 L. ed. 994; *White Dental Mfg. Co. v. Commonwealth,* 212 Mass. 35, Ann. Cas. 1913C, 805, 98 N. E. 1056.)

"Franchise" as used in the term "franchise tax" has a different meaning and refers to a different element than when

used to describe property under the revenue *ad valorem* laws. (*Louisville etc. Tel. Co. v. Hopkins,* 121 Ky. 850, 90 S. W. 594; *Home Ins. Co. v. New York, supra; Paul v. Virginia,* 75 U. S. (8 Wall.) 168, 19 L. ed. 357.)

The legislature has authority to impose license taxes. (Const., sec. 2, art. 7; *State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *State v. Union Central Life Ins. Co.,* 8 Ida. 240, 67 Pac. 647; *In re Gale,* 14 Ida. 761, 95 Pac. 679.)

It is essential to a decision in this case that the principles of the following two cases be reconciled: *Maine v. Grand Trunk Ry.,* 142 U. S. 217, 12 Sup. Ct. 121, 35 L. ed. 994; *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, 54 L. ed. 355.

As to foreign corporations seeking to do business within the state, the state is the master and may prohibit or tax such business at will. (*Bank of Augusta v. Earle,* 13 Pet. 539, 10 L. ed. 284; *Security Mutual Life Ins. Co. v. Prewitt,* 202 U. S. 246, 26 Sup. Ct. 619, 50 L. ed. 1013, 6 Ann. Cas. 317.)

A property tax must be proportional and reasonable. An excise tax need not be proportional but must be reasonable. (*White Dental Co. v. Commonwealth, supra; Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, 54 L. ed. 355; *Pullman Co. v. Kansas,* 216 U. S. 56, 30 Sup. Ct. 232, 54 L. ed. 378.)

J. E. Babb, for Respondent.

Respondent relies for affirmance upon the following authorities: *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, 54 L. ed. 355; *Pullman Co. v. Kansas,* 216 U. S. 56, 30 Sup. Ct. 232, 54 L. ed. 378; *Ludwig v. Western Union Tel. Co.,* 216 U. S. 146, 30 Sup. Ct. 280, 54 L. ed. 423; *Atchison, Topeka & Santa Fe R. Co. v. O'Conner,* 223 U. S. 280, Ann. Cas. 1913C, 1050, 32 Sup. Ct. 216, 56 L. ed. 436; *H. K. Mulford Co. v. Curry,* 163 Cal. 236, 125 Pac. 236; *Chicago M. & S. P. Ry. Co. v. Swindlehurst* (Mont.), 130 Pac. 966; *Hirschfeld v. McCullagh,* 64 Or. 502, 127 Pac. 541, 130 Pac. 1131; *White Dental Mfg. Co. v. Commonwealth,* 212

Mass. 35, Ann. Cas. 1913C, 805, 98 N. E. 1056; *King County v. Northern Pac. Ry. Co.,* 196 Fed. 323, 116 C. C. A. 143.

Where a foreign corporation is engaged in transacting both interstate and domestic commerce, an excise tax measured by its gross receipts is clearly unconstitutional unless a *bona fide* attempt is made either to apportion the tax between the domestic and interstate receipts or to confine the tax to local property and the receipts therefrom.   (*Ratterman v. Western Union Tel. Co.,* 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. ed. 229; *Leloup v. Port of Mobile,* 127 U. S. 640, 647, 8 Sup. Ct. 1380, 32 L. ed. 311; *Crutcher v. Kentucky,* 141 U. S. 47, 11 Sup. Ct. 851, 35 L. ed. 649; *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S. 196, 5 Sup. Ct. 826, 29 L. ed. 158; *Galveston etc. Ry. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, 52 L. ed. 1031; *Fargo v. Hart,* 193 U. S. 490, 24 Sup. Ct. 498, 48 L. ed. 761; *Meyer v. Wells, Fargo & Co.,* 223 U. S. 298, 32 Sup. Ct. 218, 56 L. ed. 445.)

The Kansas and Pullman cases very clearly held that the tax of the corporation on its corporate stock was a tax upon its property and all of it wheresoever situate, and its business and all of it, whether local or interstate.   Mr. Justice Holmes, though dissenting in the first case, has clearly announced the same doctrine in subsequent cases where he has written the opinion of the court recognizing that there is no longer any controversy about this.   The tax in question, therefore, being upon property in other states, violates the due process clause, and being upon interstate commerce, violates the interstate commerce clause of the constitution.

AILSHIE, C. J.—This action was instituted by the Northern Pacific Railway Co. to recover from Wilfred L. Gifford a license fee paid by it for the year 1912 to Wilfred L. Gifford as Secretary of State.

The Clearwater Short Line Ry. Co. and the Northern Express Co. each paid a license fee for the year 1912 under the same circumstances as that paid by the respondent corporation, and their claims have been assigned to the respond-

ent. The Northern Pacific Ry. Co. commenced its action, setting up the three causes of action for the recovery of these license fees which had been paid under protest. These fees were demanded under the provisions of sec. 3, chap. 6, of the Session Laws of the extraordinary session of the legislature of 1912 (Extraordinary Session 1912, p. 13). The statute reads as follows:

"It shall be the duty of every corporation incorporated under the laws of this state, and of every foreign corporation now doing business, or which shall hereafter engage in business in this state, except such as are exempt by the provisions of section 2 of this act to procure annually from the Secretary of State a license authorizing the transaction of such business in this state, and shall pay therefor a license tax as follows:

"When the authorized capital stock does not exceed $5,000.00, an annual license fee of $10.00; when the authorized capital stock exceeds $5,000.00 and does not exceed $10,000.00, $12.50; when the authorized capital stock exceeds $10,000.00 and does not exceed $25,000.00, $15.00; when the authorized capital stock exceeds $25,000.00 and does not exceed $50,000.00, $22.50; when the authorized capital stock exceeds $50,000.00, and does not exceed $100,000.00, $37.50; when the authorized capital stock exceeds $100,000.00 and does not exceed $250,000.00, $52.50; when the authorized capital stock exceeds $250,000.00 and does not exceed $500,-000.00, $75.00; when the authorized capital stock exceeds $500,000.00 and does not exceed $1,000,000.00, $90.00; when the authorized capital stock exceeds $1,000,000.00 and does not exceed $2,000,000.00, $130.00; when the authorized capital stock exceeds $2,000,000.00, $150.00.

"Said license tax or fee shall be due and payable on the first day of July of each and every year, to the Secretary of State, who shall pay the same into the state treasury. If not paid on or before the hour of four o'clock P. M. of the first day of September, next thereafter, the same shall become delinquent, and there shall be added thereto, as a penalty for such delinquency, the sum of ten dollars ($10.00).

"The license tax or fee hereby provided authorizes the corporation to transact its business during the year, or for any fractional part of such year, in which such license tax or fee is paid. 'Year,' within the meaning of this act, means from and including the first day of July, to and including the thirtieth day of June next thereafter."

The Northern Pacific Railway Co. is a corporation organized under the laws of Wisconsin with an authorized capital stock in excess of $2,000,000. The Clearwater Short Line Ry. Co. is a corporation organized under the laws of Montana with an authorized capital stock in excess of $2,000,000, and the Northern Express Co. is a corporation organized under the laws of New Jersey, with an authorized capital stock in excess of $2,000,000. The lines of all three of these companies extend through Idaho and into other states, and all are engaged in interstate commerce. The property of each of these companies was duly and regularly assessed for taxation for the year 1912 under the general revenue laws of the state providing for the raising of an *ad valorem* tax.

The fee required to be collected under the provisions of the statute involved in this case is referred to indiscriminately as a "license tax" or an "annual license fee" by the statute, which makes it clear that it is not intended as a property tax. That fact appears from the statute in unmistakable terms. The fee here exacted is clearly an excise tax as usually distinguished from a property tax. It is authorized by that portion of sec. 2, art. 7, of the state constitution which says: "The legislature may also impose a license tax (both upon natural persons and upon corporations, other than municipal, doing business in this state)." (See *State v. Doherty,* 3 Ida. 384, 29 Pac. 855, *State v. Union Central Life Ins. Co.,* 8 Ida. 240, 67 Pac. 647, and *In re Gale,* 14 Ida. 761, 95 Pac. 679.) Sec. 2, art. 7, of the constitution also provides for a property tax as follows: "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article herein otherwise provided."

The statute here under consideration would be void, if held to be a property tax, as violating the foregoing provision of the constitution, in that it does not lay the tax *according to the valuation of the property.* It would also conflict with sec. 5 of art. 7 of the constitution which provides that all taxes shall be uniform. (*Humbird Lumber Co. v. Thompson,* 11 Ida. 624, 83 Pac. 941.)

The fact that the statute provides that this license fee shall be paid by "every corporation incorporated under the laws of this state and of every foreign corporation now doing business or which shall hereafter engage in business in this state" does not invalidate the statute as imposing a fee or tax upon interstate commerce, for the reason that it was clearly the purpose of the legislature that the act should apply only to those corporations "doing business in this state" as that phrase is usually understood and as it had been previously construed by the supreme court of the state. (*In re Gale,* 14 Ida. 761, 95 Pac. 679; *Foore v. Simon Piano Co.,* 18 Ida. 167, 108 Pac. 1038; *Bonham Nat. Bank v. Grimes Pass Placer Min. Co.,* 18 Ida. 634, 111 Pac. 1078; *Diamond Bank v. Van Meter,* 19 Ida. 225, 113 Pac. 97.) It was evidently not the intention of the lawmakers that this statute should apply to corporations doing only an interstate business within the state and not "doing business within the state" within the meaning of those terms as applied to local or intrastate business.

In addition to the foregoing, there is another principle of law which would be applicable here, and that is that where a statute would be unconstitutional as applied to a certain class of cases and is constitutional as applied to another class, it should be held to have been intended by the legislature to apply only to the latter class and not to the former (*In re Gale,* 14 Ida. 761, 95 Pac. 679; *Attorney General v. Electric Storage Battery Co.,* 188 Mass. 239, 74 N. E. 467, 3 Ann. Cas. 631; *Commonwealth v. Gagne,* 153 Mass. 205, 26 N. E. 449, 10 L. R. A. 442), and so we have no hesitancy in holding that the statute here in question has no application or reference to a corporation engaged solely and exclu-

sively in interstate commerce, or in any way to interstate business, and so for that reason the statute does not run counter to the commerce clause of the federal constitution.

Counsel for respondent have argued that the judgment of the trial court in sustaining a demurrer to the complaint and entering judgment of dismissal should be sustained upon three grounds: first, that the statute under which this license fee was collected violates the commerce clause of the constitution of the United States (sec. 8, art. 1), by imposing a burden on the interstate commerce carried on by the respondent; and, second, that it violates the due process clause of the constitution of the United States (sec. 1 of the fourteenth amendment) by providing a tax upon property situated outside the jurisdiction of the state of Idaho and thereby depriving respondent of its property without due process of law; and, third, that it violates section 1 of the fourteenth amendment to the federal constitution in denying to the respondent the equal protection of the law. Our discussion of the one question will necessarily dispose of the first two questions raised. As we have already seen, the fee exacted under the statute in question was not a property tax within the purview of our constitution and statutes and was not so intended by the legislature, as an entirely different method of taxation upon property is provided for by both the constitution and the statute. It remains to ascertain, first, whether the statute has the effect of taxing the property of the corporation; and, second, whether it imposes a burden on interstate commerce. Respondent relies for affirmance of the judgment in this case upon the following authorities: *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 1090, 54 L. ed. 355; *Pullman Co. v. Kansas,* 216 U. S. 56, 30 Sup. Ct. 232, 54 L. ed. 378; *Ludwig v. Western Union Tel. Co.,* 216 U. S. 146, 30 Sup. Ct. 280, 54 L. ed. 423; *Atchison T. & S. F. R. Co. v. O'Connor,* 223 U. S. 280, Ann. Cas. 1913C, 1050, 32 Sup. Ct. 216, 56 L. ed. 436; *H. K. Mulford Co. v. Curry,* 163 Cal. 236, 125 Pac. 236; *Chicago M. & St. P. Ry. Co. v. Swindlehurst* (Mont.), 130 Pac. 966; *Hirschfeld v. McCullagh,* 65 Or. 502, 127 Pac. 541, 130 Pac. 1131; *S. S. White Dental*

*Mfg. Co. v. Commonwealth,* 212 Mass. 35, Ann. Cas. 1913C, 805, 98 N. E. 1056; *King County v. Northern Pac. Ry. Co.,* 196 Fed. 323, 116 C. C. A. 143.

The case of *S. S. White Dental Mfg. Co. v. Commonwealth,* last above cited, was taken on writ of error to the supreme court of the United States, and since hearing the oral arguments in this case an opinion has been filed in that case by the supreme court, under date of November 3d. (*Baltic Min. Co. v. Commonwealth of Massachusetts,* 231 U. S.—, 34 Sup. Ct. 15, 58 L. ed.—.) In the opinion in the latter case, the court anounces the questions that were presented as follows: "First, the title is a regulation of interstate commerce in that it imposes a direct burden on that portion of the business and capital of the plaintiffs in error which is devoted to interstate commerce; second, that the tax is in violation of the due process of law clause because it attempts to impose taxes upon property beyond the jurisdiction of the commonwealth of Massachusetts; and, third, the tax denies to the plaintiffs in error the equal protection of the law." It will therefore be seen that the same questions that were raised in the late Massachusetts case are raised in the case at bar.

The Massachusetts statute which was brought under consideration provided as follows:

"Every foreign corporation shall, in each year, at the time of filing its annual certificate of condition, pay to the treasurer and receiver general, for the use of the commonwealth, an excise tax to be assessed by the tax commissioner of one-fiftieth of one per cent of the par value of its authorized capital stock as stated in its annual certificate of condition; but the amount of such excise tax shall not in any one year exceed the sum of two thousand dollars."

The court, after a consideration of the matter and review and citation of a number of authorities, said:

"The conclusion, therefore, that the authorized capital is only used as the measure of a tax, in itself lawful, without the necessary effect of burdening interstate commerce, brings the legislation within the authority of the state. So, if the tax is, as we hold it to be, levied upon a legitimate subject of

such taxation, it is not void because imposed upon property beyond the state's jurisdiction, for the property itself is not taxed.   In so far as it is represented in the authorized capital stock, it is used only as a measure of taxation, and, as we have seen, such measure may be found in property or in the receipts from property not in themselves taxable.''

In course of an analysis and discussion of the statute, the court said:

''It is the commerce itself which must not be burdened by state exactions which interfere with the exclusive federal authority over it.  A resort to the receipts of property or capital employed in part at least in interstate commerce, when such receipts or capital are not taxed as such but are taken as a mere measure of a tax of lawful authority within the state, has been sustained.  (*Maine v. Grand Trunk Ry. Co.,* 142 U. S. 217 [12 Sup. Ct. 121, 163, 35 L. ed. 994]; *Provident Institution v. Massachusetts,* 6 Wall. 611 [18 L. ed. 907]; *Hamilton Co. v. Massachusetts,* 6 Wall. 632 [18 L. ed. 904]; *Flint v. Stone-Tracy Co.,* 220 U. S. 107, 162–5 [31 Sup. Ct. 342, 55 L. ed. 389, Ann. Cas. 1912B, 1312]; *United States Express Co. v. Minnesota* [223 U. S. 355, 32 Sup. Ct. 211, 56 L. ed. 459], *supra.*)''

It seems to us that the Idaho statute is freer from objection than the Massachusetts statute upon the point that it attempts to tax the property of the corporation outside of and beyond the jurisdiction of the state.   The Massachusetts statute, as will be observed, measures the license or excise tax to be collected by a straight percentage of ''one-fiftieth of one per cent of the par value of its authorized capital stock,'' while under the Idaho statute the fee charged is a trifle, based upon a slightly ascending scale, starting with the sum of $10 on a $5,000 corporation and ascending at stated amounts until the largest possible corporation is required to pay an annual fee of $150, while in the Massachusetts case the maximum fee might reach the sum of $2,000.   Our statute is not based on any established percentage of the company's property or capital stock.   *The fee exacted under the Idaho statute is an excise tax on the right of a foreign cor-*

*poration to carry on business within the state, that is, intra-state business, or purely local and domestic business, as dis-tinguished from any interstate business it may be doing.* This statute provides by secs. 4, 5, 6, 7 and 8 for the ter-mination of the right of a foreign corporation "doing busi-ness within the state" after failing to pay its license tax. No such consequence can be visited upon a corporation for engaging in any interstate business within the state, and a forfeiture under the statute of the right of a foreign corpora-tion to do *local or domestic* business would in no way affect the right of a corporation to continue to carry on its *inter-state* business and to do all things necessary to be done in conducting such business.

The principal cases upon which respondent relies for an affirmance of the judgment herein are *Western Union Tel. Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, 54 L. ed. 355, *Pullman Co. v. Kansas,* 216 U. S. 56, 30 Sup. Ct. 232, 54 L. ed. 378, and *Ludwig v. Western Union Tel. Co.,* 216 U. S. 146, 30 Sup. Ct. 280, 54 L. ed. 423. We shall not undertake to analyze those cases but rather content ourselves with quoting the latest view of them as expressed by the supreme court of the United States as the same is set out in the late Massachusetts case hereinbefore cited. The court says:

"In *Western Union Tel. Co. v. Kansas* and *Pullman Co. v. Kansas* the statute under which the state of Kansas undertook to levy a charter fee of one-tenth of one per cent of their authorized capital upon the first $100,000 of the capital stock of foreign corporations and one-twentieth of one per cent upon the next $400,000, and for each million or major part thereof, $200, making a tax of $20,100 against the Western Union Tel. Co. and $14,800 against the Pullman Co., was declared to be unconstitutional, as having the ef-fect not simply to exert the lawful power of taxing a for-eign corporation for the privilege of doing local business, but to burden interstate commerce and to reach property rep-resented by the capital stock of the companies, which was duly paid in and invested in property in many states and therefore beyond the taxing jurisdiction of Kansas."

Counsel for appellant place great reliance on *Maine v. Grand Trunk R. R. Co.,* 142 U. S. 217, 12 Sup. Ct. 163, 35 L. ed. 994, while counsel for respondent has suggested that the rule announced in that case has been characterized by the supreme court in *Galveston H. & S. A. R. Co. v. Texas,* 170 U. S. 226, 18 Sup. Ct. 603, 42 L. ed. 1017, as an "extreme case," and subsequently criticised in *Meyer v. Wells, Fargo & Co.,* 223 U. S. 298, 32 Sup. Ct. 218, 56 L. ed. 445. We find, however, that the Massachusetts case, heretofore quoted from, so recently decided by the supreme court, cites *Maine v. Grand Trunk Ry. Co.* and *Flint v. Stone-Tracy Co.* and *United States Express Co. v. Minnesota* with approval. We find, too, that in most of the cases since *Maine v. Grand Trunk Ry. Co.,* the court has been divided, frequently five to four. We see Mr. Justice Holmes concurring with the majority of the court in the cases of *Baltic Mining Co.* and *S. S. White Dental Co. v. Commonwealth of Massachusetts* in enunciating a rule and pointing out distinctions which seem in the plainest accord with the clear, terse and logical statements of the same justice in his dissenting opinion in *Western Union Tel. Co. v. Kansas,* all of which impresses us with the controlling force of the statement by Mr. Justice Day in *Dental Mfg. Co. v. Massachusetts,* in commenting upon the Kansas cases, that "every case involving the validity of a tax must be decided upon its own facts, and having no disposition to limit the authority of those cases, the facts upon which they were decided must not be lost sight of in deciding other and alleged similar cases." And, again, quoting his language from the same case where he says: "An examination of the previous decisions in this court shows that they have been decided upon the application to the facts of each case of the principles which we have undertaken to state, and a tax has only been invalidated where its necessary effect was to burden interstate commerce or to tax property beyond the jurisdiction of the state."

The foregoing excerpt reminds one of the impression he has after reading the Kansas cases, namely, that the really controlling consideration with the great jurist who wrote the

majority opinion of the court in those cases was the fact that the amount of the excise or license fee laid upon the corporations by the statute of Kansas was so exorbitant and unreasonable that the companies would not likely have been able to pay the same and would have as an alternative been obliged to abandon their local or intrastate business if the statute had been upheld, and that the Kansas legislature was in fact trying to tax the whole property of the corporation, and so the court concluded that it amounted to really laying a tax upon all the property of the companies, whether within or beyond the state, and had the effect of both interfering with *interstate commerce* and *taking the property* of the company *without due process of law.* No such charge can be justly laid against the Idaho statute. It is clear from every viewpoint that it is a mere excise or what is commonly and locally designated as an "occupation" fee intended to be charged against both domestic and foreign corporations for maintaining offices and engaging in local and domestic business, as distinguished from purely interstate commerce. The fee charged is a trifle, the maximum that can be charged upon the largest corporation which may enter the state being only $150.

So far as the allegation is concerned to the effect that the local business is done at a loss instead of a profit, we think it immaterial and of no avail in a case like this. No objection is made to the corporation abandoning its local business, if it is willing to take the consequences which necessarily follow that action. The license fee or excise claimed is not based upon or measured by the amount of business done. Many corporations and individuals may be doing business either at a loss or profit, but that fact is not considered in laying an excise on the business as such.

We have examined and considered the array of authorities presented on this question with considerable care and much interest, but it would be entirely useless for us to pursue an analysis of these decisions any further. This case presents a purely federal question, and we have endeavored to follow the rule that has been announced by the supreme

court of the United States, and we believe that in the light of all the decisions, which is made clearer by the latest expression from that court, the tax here involved is legal and lawful and does not infringe upon any constitutional right of the respondent or in any way *burden or interfere with interstate commerce.*

The principle upheld in the following cases seems to support the view we are taking of this case: *Pullman Co. v. Adams,* 189 U. S. 420, 23 Sup. Ct. 494, 47 L. ed. 877; *Allen v. Pullman Co.,* 191 U. S. 171, 24 Sup. Ct. 39, 48 L. ed. 134; *Horn Silver Mining Co. v. New York,* 143 U. S. 305, 12 Sup. Ct. 403, 36 L. ed. 164; *Security Mutual Life Ins. Co. v. Prewitt,* 202 U. S. 246, 26 Sup. Ct. 619, 50 L. ed. 1013, 6 Ann. Cas. 317; *Postal Tel. Cable Co. v. Charleston,* 153 U. S. 692, 14 Sup. Ct. 1094, 38 L. ed. 871; *Osborne v. Florida,* 164 U. S. 650, 17 Sup. Ct. 214, 41 L. ed. 586.

We are not unmindful of the holding of the California court in *H. K. Mulford Co. v. Curry, supra,* and of the construction there placed upon a statute substantially the same as ours. An examination of that case discloses that the California court were of the opinion that the Kansas and Arkansas cases (*Western Union Tel. Co. v. Kansas, supra; Pullman Co. v. Kansas,* and *Ludwig v. Western Union Tel. Co., supra*) were controlling and that they had direct application to the statute there under consideration. It is very apparent from a perusal of the opinion of the court in that case that the writer was of the belief that the supreme court had departed from the doctrine of the case of *Maine v. Grand Trunk Ry. Co.* and similar cases. Since the California decision, however, the Massachusetts case has been decided both by the supreme court of Massachusetts and the supreme court of the United States, and the latter court has cited the Maine case with approval, and the comment of the writer of the latest opinion to the effect that it is the settled purpose of that court to decide each case upon its own facts, irrespective of any theoretical rule, convinces us that the supreme court intend to determine the *effect* of the statute as it will apply in *actual practice,* rather than decide it upon the *theory of*

*any* apprehended dangers which might flow from other similar legislation which might prove more exacting. Indeed, the court says: *"A tax has only been invalidated where its necessary effect was to burden interstate commerce or to tax property beyond the jurisdiction of the state."* Possibly if the statute here under consideration placed the maximum fee to be charged at $50,000 instead of $150, the supreme court, deciding upon the theory above suggested, might hold that it unreasonably burdens interstate commerce, although the company has the alternative of abandoning its purely intrastate business. In such case the court might conclude that this exaction was not merely an occupation tax for the right to carry on the intrastate business of the company as distinguished from its interstate business. But that is only an imaginary case. The case in hand, on the contrary, imposes a mere nominal fee which can in no case exceed $150 and is claimed only from corporations "doing business in this state," and we have heretofore seen that this expression has reference only to the carrying on of intrastate or domestic business as distinguished from interstate business. Certainly, if the corporation's domestic business is not worth paying a fee of $150 annually for the privilege of transacting such business, it will not suffer by abandoning that business and confining itself only to its interstate business and *such business as necessarily attaches and pertains to its interstate traffic.* The proclamation of the governor declaring a noncomplying foreign corporation outlawed and no longer entitled to do business in this state has no reference or application to *interstate business* and would in no way impair or diminish the right of such corporation to carry on its interstate business (*Foore v. Simon Piano Co.,* 18 Ida. 167, 108 Pac. 1038), but it would deprive it of the right to maintain or defend actions in the courts of this state or to any standing whatever in this state in reference to domestic business. In this connection it has been suggested by counsel for respondent that under the provisions of sec. 5 of art. 2 of the state constitution, the respondent corporation as a common carrier could not decline or refuse to carry on domestic

or intrastate business. This provision of the constitution is dealing with domestic business and with corporations doing business in this state as distinguished from interstate business. (*Foore v. Simon Piano Co., supra.*) But if it were otherwise, this provision of the constitution says they are subject to *legislative control*, and in the case at bar the legislature has spoken and designated the terms on which respondent can do business in the state and that upon failure to comply with the legislative requirement, it shall have no existence or standing in the state so far as local and intrastate business is concerned and shall have no standing in the courts for the purpose of prosecuting actions or defending any rights of property. We conclude, therefore, that to refuse to comply with this provision of the statute and to become outlawed so far as it involves its right to do business in this state, would not subject it to another process compelling it to do the very business that it is prohibited doing under this legislative direction.

We are of the opinion that the statute in question can and ought to be upheld, and that it falls clearly within the purview of the case of *Maine v. Grand Trunk Ry. Co.* and many other cases following the holding there announced, and clearly within the case of *Baltic Mining Co. v. Commonwealth of Massachusetts* (231 U. S.—, 34 Sup. Ct. 15, 58 L. ed.—) so recently decided. We, therefore, conclude that the judgment of the trial court must be reversed and the cause remanded with direction to the trial court to sustain the demurrer. It is so ordered with costs in favor of appellant.

Sullivan and Stewart, JJ., concur.