## NATIONAL SAVINGS & LOAN ASS'N v. GILLIS, Atty. Gen. of Idaho, NEW WORLD LIFE INS. CO. v. SAME. VERMONT LOAN & TRUST CO. v. SAME.

District Court, D. Idaho. S. D. September 12, 1929.

Nos. 1493–1495.

388

Alexander Winston, of Spokane, Wash., and Hawley & Hawley, of Boise, Idaho, for plaintiff National Savings & Loan Ass'n.

Oliver O. Haga, McKeen F. Morrow, J. L. Eberle, and Richards & Haga, all of Boise, Idaho (E. D. Ham, of Spokane, Wash., and Martin & Martin, of Boise, Idaho, of counsel), for plaintiffs Vermont Loan & Trust Co. and New World Life Ins. Co.

W. D. Gillis, Atty. Gen., of Idaho, and Fred J. Babcock, Asst. Atty. Gen., for defendant.

Before DIETRICH, Circuit Judge, and NETERER and CAVANAH, District Judges, as a statutory three-judge court.

CAVANAH, District Judge. These three cases, which involve the constitutional validity of the act of the Idaho Legislature, passed at its 1929 session, were presented at the same time and will be disposed of in this opinion.

The plaintiff National Savings & Loan Association is organized under the laws of the state of Washington, and its business is that of a mutual savings and loan association, with its principal place of business at Spokane, Wash., and loans its money only to its members upon first mortgages on real estate. In 1922 it complied with the laws of Idaho in regard to entering the state, and has paid the required annual license fee of $150, which authorized it to transact business in the state, and it designated Bonner county, where it has a resident agent, as its principal place of business in this state. It has no other investments than the loans it makes to its members, except the sum of $10,-

273.10, invested in bonds of municipalities of the state of Washington. Under the laws of Washington it is forbidden from carrying any demand, commercial or checking account, and from receiving any savings or sums of money on deposit, without issuing shares of stock for the same. There are now in Idaho about 13 domestic building and loan associations of the same type and character as it, who are in direct competition with it in the making of loans, and who are exempt from taxation under the laws of Idaho. Of its 13,000 shareholders, more than 98 per cent. are residents and citizens of the state of Washington, and possess their stock in that state. It has about 100 loans made upon property in different counties of Idaho, which it alleges cannot be sold without sustaining a loss of more than $50,000. Through its representatives it has built its business in the state in making loans, and if the tax is required to be paid it will sustain a great loss, as it has no means of withdrawing from the state without waiting the maturity of the loans, which run from five to seven years. The loans were made by different loaning agencies of plaintiff in different parts of the state, who receive from persons or companies applications therefor, and which are filled out by the applicant on a blank furnished by plaintiff. The applications are then forwarded to it at its main office in Spokane, and thereupon its representative goes to Idaho to examine the property upon which the loan is made, and, after making an examination, if he believes the loan should be made, his recommendation then goes before its board of directors for action, and, if approved, notice thereof is sent to the agent in Idaho, who is termed as agent of the borrower, who then secures an abstract of title to the property and forwards it to the Spokane office for examination, and all necessary papers thereafter used in completing the loan are sent to the agent in Idaho, who then closes the transaction.

The plaintiff New World Life Insurance Company is a Washington corporation, and is primarily engaged in the life insurance business. A portion of its premium receipts and money from other sources is invested in mortgages, bonds, and other securities in Idaho and other states. Its investments in Idaho aggregate $1,000,000. Under section 4996 of the Compiled Statutes of Idaho it pays an annual tax of 2 per cent. on all premiums received on business transacted in Idaho. During the past 15 years it has been authorized to do a life insurance and loan business in the state. It is required to desig-

nate the commissioner of finance of Idaho as its attorney upon whom all processes in any action against it may be served. Its aggregate loans in Idaho are over $790,000. There are about 13,000 stockholders, nearly all of whom are nonresidents of Idaho. The means adopted in making the loans are similar to those of the National Savings & Loan Association, excepting that none of its representatives in the state has any authority to make or approve loans, as that is done through its office at Spokane.

The plaintiff Vermont Loan & Trust Company is a North Dakota corporation, having its main office also at Spokane, and for about 35 years has been engaged in the business, conducted at its office in Spokane, of loaning money on real estate, both on its own account and as agent for other companies. Nearly all of its stockholders are nonresidents of Idaho, and it has made mortgage loans in Idaho, for itself and as agent for other companies, aggregating in amount $500,000. The city of Moscow, in Latah county, Idaho, where its statutory agent resides, is its principal place of business in the state, and it is in all respects similar to its offices and business maintained and transacted in other counties of the state. Its business is carried on in the state in substantially the same manner as that of the plaintiff New World Life Insurance Company.

The act of the Idaho Legislature in question is chapter 252 of the Session Laws of 1929, and it requires all foreign corporations or associations incorporated under the laws of any state, and licensed to do business within the state, which use their capital in competition with moneyed capital invested in shares of stock of any national or state banking association, or building and loan association, or any other assets or capital which has been held by the courts to be competitive capital with the invested capital of shareholders of any bank doing a loan or investment business, shall pay a tax upon the shares of their capital stock, the value of which is fixed by the proportion of their invested capital located in the state, and exempts from its operation all like building and loan associations organized and engaged in such business under the laws of Idaho.

At the time these plaintiffs, which are companies incorporated under the laws of other states, entered Idaho, and until the adoption of the 1929 act, all stock of foreign and domestic building and loan associations were exempt from taxation, and the adoption of the 1929 act has caused these plaintiffs to challenge its constitutionality upon the grounds that it violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, and deprives their stockholders of privileges and immunities guaranteed to them by the Fourteenth Amendment, and violates sections 2, 5, and 12 of article 7, and section 6 of article 18, of the Constitution of the state of Idaho.

To answer satisfactorily the questions thus presented, it is necessary to consider the pertinent provisions of the act respecting the tax upon the shares of stock of foreign companies, and the methods of enforcing the same. By its terms shares of capital stock of any bank or other corporation or finance company organized under the laws of the state, excepting building and loan associations, shall be assessed and taxed in accordance with the provisions of article 12, chapter 144 (sections 3297–3303), of the Compiled Statutes of Idaho, which provides for a tax upon such shares of stock, and any foreign corporation or association licensed to do business within the state, and engaged in or which uses its capital in competition with those stated, shall, on or before the first Monday of June of each year, file with the assessor of the county in which its principal place of business is located within the state, or, in case no principal place of business is designated in the state, then with the assessor of the county of its resident agent, a statement substantially in conformity with the provisions of section 3298 of the Compiled Statutes of Idaho, and show therein the total amount of its investments and loans made within and without the state. It then shall be the duty of the assessor, upon receipt of such statement, to assess such shares of capital stock according to the ratio that its investments and loans within the state bear to its total loans and investments, making the same deductions therefrom as are provided for in section 3297 of the Compiled Statutes. The foreign corporation and association shall then pay the tax upon such shares of stock, and the procedure for the assessment of the same, the entry on the personal property tax rolls, and the collection thereof shall be in compliance with the provisions of article 12 of chapter 144 of the Compiled Statutes. It is then made the further duty of the county assessor to notify the Attorney General of the state of a failure of any such foreign corporation to comply with the act, who shall then bring an appropriate action in any court having jurisdiction for the forfeiture of the right of such corporation or association to do business within the state, and upon proof

thereof such right shall be forfeited and its license canceled, and any loan or contract made by it, after such forfeiture, shall be null and void. The further provision is made that any other moneyed capital within the state, which is or may be in substantial competition with capital invested in the shares of capital stock of banks, and for which no other provisions have been made for the assessment and collection of taxes thereon, shall be assessed by the assessor in the county of the residence of the ownership of such competitive capital. The assessor shall then place an assessed valuation upon such competitive capital, as defined in the act, on the same basis of valuation as is placed upon the shares of capital stock of any bank, and make the same deductions with respect to any part or portion of such moneyed capital which may be invested in other assessable property: Provided, however, that bonds, notes, or other evidences of indebtedness in the hands of the individual citizen of the state not employed or engaged in the banking or investment business, and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of the act. The assessment and taxation of the shares of capital stock and moneyed capital, provided for in the act, shall be the sole and exclusive method of assessing and taxing such shares and moneyed capital, notwithstanding any other laws of the state relating to the assessment and taxation of property, unless express provision shall be made in any other law in conflict with the provisions of the act.

Article 12 of chapter 144 (sections 3297–3303) and sections 3297 and 3298 of the Compiled Statutes of Idaho, referred to in the act, are provisions of existing law prescribing the manner of assessing and collecting taxes levied upon the shares of capital stock of national and state banks, trust companies, and surety and fidelity companies, organized under the laws of the state, which shall be where the same are located and on the same basis of actual value and uniformity with all other property assessed in the county in which the shares of capital stock are assessed. Prior to the passage of the amendment of section 3099 of the Compiled Statutes of Idaho by chapter 201 of the Session Laws of 1929, all "stock of building and loan corporations or associations organized to accumulate the savings of members and loan the proceeds on real estate security or obligation secured by lien, tax or assessment on real property for the benefit of its members" were exempt from taxation, but by the amendment the exemption was limited to "stock of building and loan corporations or associations organized under the laws of the state of Idaho for the purpose of accumulating the savings and funds of their members and lending the same to their members." Chapter 201, Session Laws of Idaho 1929.

[1] In view of the fact that the act we are reviewing denominates the assessment a tax, and provides for proceedings for the collection of it, we cannot go far afield in treating it as a tax upon personal property. 3 Cooley on Taxation (4th Ed.) p. 1954; Weiser National Bank v. Jeffreys, 14 Idaho, 659, 95 P. 23; Spokane & Eastern Trust Co. v. Spokane County, 70 Wash. 48, 126 P. 54, Ann. Cas. 1914B, 641. And, being so, it was competent for the Legislature to prescribe the procedure and processes for its collection, provided the act does not run counter to the constitutional objections raised.

The basis on which the levy of taxes is made upon property, as required by the state Constitution, is by valuation, so that each person or corporation shall pay a tax "in proportion to the value of his, her, or its property." Idaho Constitution, art. 7, §§ 2 and 5. And it would seem that, under the interpretation given by the Supreme Court of the state to these sections, any attempt to lay a tax on property in any other manner would be void. Northern Pacific Ry. Co. v. Gifford, 25 Idaho, 196, 136 P. 1131. So the first inquiry here is: Does the act under review prescribe a correct method of arriving at the valuation of shares of stock as contemplated by the state Constitution, which must be in proportion to the valuation of the property taxed and uniform upon the same class of property? Referring again to the act, it will be noticed that the shares of the capital stock of these foreign corporations are assessed according to the ratio that their investments and loans within the state bear to their total loans and investments, which estimates the amount of the tax upon the companies according to the total amount of their loans and investments, thereby measuring the tax within the authority of the state by the volume of business transacted which in part is without the state. Kansas City Memphis & Birmingham Railroad Co. v. Stiles, 242 U. S. 111, 119, 37 S. Ct. 58, 61 L. Ed. 176. Any mode that may be just and convenient, in which the sum shall be ascertained may be adopted by the Legislature as a condition of admission or continued existence of the corporation in the state. Horn Silver Mining Co. v. New York, 143 U.

S. 305, 313, 12 S. Ct. 403, 36 L. Ed. 164. The mode prescribed by this act in ascertaining the amount of the tax would seem just and according to valuation, and is approved in the Kansas City M. & B. Ry. Co. and Horn Silver Mining Co. Cases.

The contention is made that the act does not provide for securing an assessment of the property according to the requirements of section 12 of article 7, and section 6 of article 18, of the state Constitution, wherein the Legislature is required to provide for the election biennially of a board of county commissioners for the several counties, who shall constitute a board of equalization for the respective counties, and whose duty shall be to equalize the valuations of taxable property in the county, so that after the property is assessed by the assessors the property owner may have an appeal to the board of county commissioners sitting as a board of equalization, and there have reviewed the action of the assessor. While the act only requires the assessor to make the assessment of the shares of stock in the manner prescribed, and does not provide for the creation of a board of equalization and an appeal thereto, yet there is ample machinery provided for by the general laws of the state granting to all owners of personal and real property the right to be heard before the board of county commissioners, which functions as a board of equalization, hears complaints, and equalize the assessment of all personal and real property. Compiled Statutes of Idaho, §§ 3304 to 3307, and 3152 to 3166. Therefore it was unnecessary for the Legislature to provide again in this act the creation of a board of equalization and an appeal thereto.

The attack made by plaintiffs that the title of the act is defective, in not sufficiently suggesting the scope of the statute, and not broad enough to include insurance and mortgage companies, need not detain us long, after a reading of it and the interpretation of the state Supreme Court of section 16 of article 3 of the state Constitution, wherein the court held that, if one can "reasonably gather the purpose and object of [the] act as found in the bill from its title," and "put a person * * * on notice of the contents of the act" (Turner v. Coffin, 9 Idaho, 338, 74 P. 962), that would be a compliance with the constitutional requirements. The language set forth in the title, where it is stated, "An act * * * providing a system of taxing the shares of stock of any bank, building and loan association, finance company and other capital in competition with banks as defined in this act" (chapter 252, Laws 1929), would seem sufficient to inform one that the bill related to any company using its capital in competition with banks, which would cover any insurance company using its capital in making loans in the state on real estate mortgages.

The plaintiff New World Life Insurance Company further urges that, as it is primarily engaged in the life insurance business, and pays 2 per cent. of the amount of its gross premium receipts on business transacted in the state under section 4996 of the Compiled Statutes, which provides that the payment of the tax "shall be in lieu of all other taxes upon premiums and upon the personal property of such companies and the shares of stock or assets thereof," it was not the intention of the Legislature to change the existing law taxing life insurance companies, but has excluded them from assessment under the act in question, as section 6 thereof provides that "the assessment and taxation of shares of capital stock herein provided for, and moneyed capital, shall be the sole and exclusive method of assessing and taxing such shares and moneyed capital, notwithstanding any other laws of the State of Idaho relating to the assessment and taxation of property unless express provision shall be made in any other law in conflict with the provisions of this act," and to now require of it to pay the tax in question would amount to double taxation. The fallacy of this argument lies in the failure to distinguish between a life insurance company, functioning as such, to which section 4998 relates, and when it invests its capital in the state by entering the field in competition with others who loan money on mortgages, and operates on the same basis as any other company with which it comes in competition. It becomes engaged in using its capital in competition with the invested capital of shareholders of banks. The two statutes cover entirely two different situations, and this does not amount to double taxation.

This brings us to the general principal question presented, challenging the constitutionality of the act, on the ground that it violates the equal protection and due process clauses of the Constitution, in exempting from the tax domestic building and loan associations, and imposing the same on foreign building and loan and mutual savings and loan associations, and companies who have been admitted in the state and engaged in the same kind of business. It is evident that the purpose of the act was to require all moneyed capital in the state,

which is or may be in competition with capital invested in the shares of capital stock of banks, to be subject to the tax, except building and loan associations organized under the laws of the state, and bonds, notes, and other evidences of indebtedness held by individual citizens of the state, and not employed in the banking or investment business, and representing merely personal investments not made in competition with banks. The act operates alike upon all who have moneyed capital invested in the state in competition with banks, except domestic building and loan associations.

But the contention is that the equal protection clause is contravened by the provision exempting from the operation of the tax domestic building and loan associations, and not applying the statute alike to all of a class under the same circumstances and conditions. The state is not precluded in imposing taxes from exempting building and loan associations, provided it does not act arbitrarily in placing them in a separate class, as its power to classify for purposes of taxation is of wide range, with the limitation that the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U. S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989; Schlesinger v. Wisconsin, 270 U. S. 230, 240, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224; Air-way Corp. v. Day, 266 U. S. 71, 85, 45 S. Ct. 12, 69 L. Ed. 169.

Here it seems clear that the plaintiff National Savings and Loan Association, which is engaged exclusively in loaning its money to its members upon first mortgages on real estate for a period of from five to ten years, and repayable on the monthly installment plan, is placed in a different class than domestic building and loan associations of the same type and character and doing a like business in the same way as plaintiff, and who are exempt from the operation of the tax. Under such circumstances the inquiry naturally arises: Does the effect of the exemption deny the plaintiff the equal protection of the law in violation of the equality provision of the Constitution, and is the plaintiff arbitrarily discriminated against by such a classification? A classification which divides companies doing the same kind of business as the plaintiff, and the domestic building and loan associations, into domestic and foreign companies, without any apparent reason, is an arbitrary selection which cannot be justified by calling it classification. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 559, 22 S. Ct. 431, 46 L. Ed. 679; Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92.

The classification should not be an arbitrary one, but based on a real difference, and those within the class should be treated with equality. Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770; Fidelity & Deposit Co. of Maryland v. Tafoya et al., 270 U. S. 426, 46 S. Ct. 331, 70 L. Ed. 664; Stebbins v. Riley, 268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454. The plaintiff National Savings & Loan Association, having been admitted to transact such business in the state before the adoption of the act imposing the tax, should be classified with similar domestic companies in testing the equality of the laws; otherwise, the act imposing a charge as a tax upon it greater than upon other companies of the same type and doing business in the same way violates the equal protection clause of the Constitution. Hanover Fire Insurance Co. v. Harding, 272 U. S. 494, 47 S. Ct. 179, 183, 71 L. Ed. 372, 49 A. L. R. 713; Southern Ry. Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Leecraft v. Texas Co. (C. C. A. 8) 281 F. 918; Yale & Towne Mfg. Co. v. Travis (D. C.) 262 F. 576.

But the defendant urges that, notwithstanding the rule of classification thus announced, the state has the right to impose upon a foreign corporation a property tax different from that imposed upon a domestic corporation, as it has power to prescribe conditions under which foreign corporations may enter it and continue doing business within its limits. To this power the qualification exists that the state may not exact, as a condition of the foreign corporation continuing doing business after its admission, and who is of the same kind as the domestic corporation, the surrender of its rights secured to it by the Constitution of the United States. Where there are foreign and domestic corporations of the same kind, a line should be drawn between the burden imposed by the state upon a foreign corporation for the privilege of entering the state to do business and the tax burden after such privilege is secured. This is illustrated in the case of Hanover Fire Insurance Co. v. Harding, supra, where a

tax was imposed on the net receipts of foreign insurance companies, doing business in the state of Illinois and who were taxed on a different basis than domestic companies. The court said:

"In subjecting a law of the state which imposes a charge upon foreign corporations to the test whether such a charge violates the equal protection clause of the Fourteenth Amendment, a line has to be drawn between the burden imposed by the state for the license or privilege to do business in the state and the tax burden which, having secured the right to do business, the foreign corporation must share with all the corporations and other taxpayers of the state. With respect to the admission fee, so to speak, which the foreign corporation must pay to become a quasi citizen of the state and entitled to equal privileges with citizens of the state, the measure of the burden is in the discretion of the state and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment; but after its admission the foreign corporation stands equal, and is to be classified, with domestic corporations of the same kind."

As a compliance with the act imposing the tax not being a condition precedent to permission to do business in the state, by the National Savings & Loan Association, who is in the same class as domestic building and loan associations exempted from the operation of the tax, it is obvious from what has been said that the tax imposed by the act on the plaintiff National Savings & Loan Association is a denial of the equal protection of the law, and its enforcement as to it will be enjoined.

Recognizing, then, the rule that the power of the state to classify for the purpose of taxation is of wide range, and when applied to the situation of the New World Life Insurance Company and the Vermont Loan & Trust Company, we are forced to the conclusion that the separate class in which the Legislature has placed domestic building and loan associations from the class in which these two companies are placed is a reasonable one, and rests upon the ground of difference having a fair and substantial relation to the object of the legislation. Such a classification is not an arbitrary one, and is within the power of the Legislature to make.

It is further insisted that, as the act levies a tax upon the shares of stock, most of which are owned by nonresident shareholders, and not upon the mortgages or other securities held by plaintiffs, it cannot be sustained, for the shares of stock are intangible personal property, and have a situs at the domicile of their owner, and are not the subject of taxation, except where they have acquired a business situs at some place in the state. While it is to be conceded that the power of the state of taxation is limited to operate upon property and persons within the sphere of its territorial limits (New York, L. E. & W. R. Co. v. Commonwealth of Pennsylvania, 153 U. S. 628, 14 S. Ct. 952, 38 L. Ed. 854; Cleveland, P. & A. R. Co. v. Pennsylvania, 15 Wall. 300, 21 L. Ed. 179), yet admittedly the status of each of the plaintiffs is that of a foreign corporation doing business in the state of Idaho, in full compliance with the Constitution and laws of the state. By section 10 of article 11 of the Constitution of the state, it is provided that:

"No foreign corporation shall do any business in this state without having one or more known places of business, and, an authorized agent or agents in the same, upon whom process may be served, and no company or corporation formed under the laws of any other country, state, or territory, shall have or be allowed to exercise or enjoy, within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of this state."

And by sections 4772 and 4773 of the Compiled Statutes (1919) such a corporation is required to file, with the recorder of the county "in which is designated its principal place of business" in the state, a certified copy of its articles of incorporation, and also with the secretary of state a certified copy thereof. It must also designate some person in such county as its agent upon whom process running against it may be served, and file a writing to that effect in the office of the clerk of the district court in such county, and also in the office of the secretary of state. By section 4774 provision is made for the change of the designated principal place of business from one county to another, and for the designation of an agent for the service of process, in the new county.

It will be seen that the corporation thus acquires a quasi presence and domicile in the state, with a local situs in a designated county, not unlike that of a domestic corporation, established by the requisite statement in its articles of "the place where its principal business is to be transacted."

And by so entering the state and transacting business therein it must be held to have impliedly consented that it shall not "have or be allowed to exercise or enjoy * * * any greater rights or privileges than those possessed or enjoyed" by domestic corporations "of the same or similar character." Specifically, in thus coming into Idaho, plaintiffs and their stockholders must be deemed to have so consented.

By the act in question admittedly the Legislature has attempted to apply to plaintiffs and their stockholders the identical system of taxation to which domestic companies of similar character, and their stockholders, are subject. Whether the act be held effective or not, plaintiffs expressly concede that such was the legislative intent. We therefore have a case where, being engaged in a certain line of business in the state, domestic corporations and their stockholders, whether resident in or out of the state, are subjected to certain tax burdens, and another corporation, also having stockholders both in and out of the state, and doing the same kind of business within the state, challenges the power of the Legislature to subject it and its stockholders to the same kind of a tax burden in respect to such business and the property interests involved therein, within the state, merely because it was organized under the laws of some other state, and in the face of the fact that in securing the privilege of operating in Idaho, in competition with local institutions of the same character, it and its stockholders, in effect, consented that it should never be allowed to exercise or enjoy any greater rights or privileges than those possessed or enjoyed by local institutions with which it is a business competitor.

Under the facts and the law the act is thought to be valid within the principle of Tappan v. Merchants' National Bank, 19 Wall. 490, 22 L. Ed. 189, and Corry v. Baltimore, 196 U. S. 466, 25 S. Ct. 297, 49 L. Ed. 556. And see, also, Savings & Loan Society v. Multnomah County, 169 U. S. 421, 18 S. Ct. 392, 42 L. Ed. 803; Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701, and Metropolitan L. Ins. Co. v. New Orleans, 205 U. S. 395, 27 S. Ct. 499, 51 L. Ed. 853.

■ In respect of the New World Life Insurance Company and the Vermont Loan & Trust Company, and other like concerns, the act in no substantial particular discriminates in favor of similar domestic companies engaged in business of the same character. For the taxation of such domestic companies or their stockholders the law assumes that all the business and property interests are in Idaho. The purpose and the only function of the "ratio" clause in the act under consideration is to segregate for taxation such business and property interests of foreign companies and their stockholders as also have an Idaho situs, and which therefore have substantially the same status as the entire business and property interests of local companies are assumed to have. The business and interests so segregated are then in all particulars of procedure, standard of valuation, exemptions, and rates of levy, to be treated the same as those of domestic companies. We do not interpret the act as requiring the assessor to give a value to the stock necessarily corresponding to the face or book value of outstanding Idaho loans and investments. If, in fact, such loans and investments are all worthless, there would be no assessable value, any more than there would be an assessable value in the like case of a local company.

As nearly as may be in respect of the place of assessment and taxation, both domestic and foreign companies are given the situs in the state where they have chosen to locate their principal place of business. And in both cases, while in terms the tax is imposed upon the shares of stock, it is made the duty of the corporation to pay it. In short, instead of being discriminatory against foreign companies, the act would seem merely to put them upon equal footing with local companies as to the business in respect of which they are competitors, thus bringing the rights and privileges of the two classes into harmony with the provision of the state Constitution above quoted.

■ The effect of the tax sought to be enforced by the act is against the amount of the investments and loans of the companies made within the state, and which have an Idaho situs, and is really against property owned by the corporation in the state, and not against the individual shareholders upon their shares, notwithstanding the procedure prescribed by the act. When in prescribing the procedure and estimating the amount of the tax upon the corporation for doing business within the state, according to the amount of its business or capital within the state, that is a matter resting entirely in the control of the state. Horn Silver Mining Co. v. New York State, supra.

■ It may be true that in some respects the act is wanting in desirable certainty of

expression, but there is no reason for excepting it from the general rule that, where legislation is reasonably susceptible to a construction under which it is valid and may be given effect, that construction is to be adopted, rather than one which would render it void.

So, under the view we take of the act, when applied to the plaintiffs New World Life Insurance Company and the Vermont Loan & Trust Company, the tax is not open to challenge as an exaction in violation of the Constitution of the United States, and therefore the restraining order must be denied, and the action dismissed, as to said companies.